The Bank of St. Albans *v.* John Smith.

*Principal and surety.   Discharge of surety.*

A surety, known to be such by the payee, upon a note payable at a fixed time, and left by the principal with the payee with an agreement between them, unknown to the surety, that it shall stand as collateral security, not only for the principal's debts to the payee then existing, but also for those that might subsequently accrue, is not liable upon the note to the payee, if the latter's only claim at the time of suit is for a loan to the principal, made after the maturity of the note, notwithstanding it was expressly agreed between the principal and the payee at the time of making this loan that the note should be held as collateral security for it.

Bank of St. Albans v. Smith.

A change made in a contract of suretyship by the creditor and principal, without the assent of the surety, discharges the latter whether the change is prejudicial to him or not. BENNETT, J.

ASSUMPSIT on a promissory note for four hundred dollars, dated November 13, 1848, signed by Gardner G. Smith and the defendant, and payable to the plaintiffs ten days from date. Plea, the general issue, and trial by jury, at the June Term, 1856,—PECK, J., presiding.

The plaintiffs, on trial, introduced the note in question, and claimed to recover the amount of a three hundred dollar note, dated April 30, 1849, payable on demand, signed by Gardner G. Smith, and interest on that sum from the date of the three hundred dollar note, which they also gave in evidence. The plaintiffs also introduced as a witness one Francis I. Houghton, whose testimony tended to show that for some time previous and up to the date of the four hundred dollar note, Gardner G. Smith was in the habit of borrowing money of the bank in sums from twenty-five dollars to three hundred dollars for a few days, payable on call, and within a few days at furthest, without any other security than his own, and with no other written evidence of the loan than his check or note, or a minute made by the cashier; and that these checks, notes and minutes were treated and counted as cash by the bank, no entries being made on the bank books of such loans, although Gardner G. Smith kept a regular deposit account at the bank; that just before the date of the four hundred dollar note the witness told Gardner G. Smith, by order of some of the directors of the bank, that the bank would not continue the practice of these temporary or minute loans any longer, unless he would bring them a note with surety to remain in and be held by the bank as collateral security, as well for what he already owed them on account of such loans, as for such loans of that character as he might thereafter obtain; and that soon after this, Gardner G. Smith brought into the bank the four hundred dollar note, and delivered it to him for that purpose, and that the bank kept it as collateral security with an understanding between them and Gardner G. Smith that they were to hold it for any claim the bank might have for such loans already made and for any future loans of the description mentioned.

The witness stated that he thought that at the time the four hundred dollar note was delivered there were some loans of this description to Gardner G. Smith, outstanding, but he was not positive, nor could he tell whether he made any such loan to him or advanced anything to him on the delivery of the four hundred dollar note or not, but stated that the four hundred dollar note was never discounted, but the bank received and held the note as such collateral security as above mentioned. His testimony also tended to show that from the time the bank received the four hundred dollar note, the practice of temporary loans was continued down to the date of the three hundred dollar note, when the amount of that note was advanced to Gardner G. Smith by the bank, and that this loan was made on the faith and credit of the four hundred dollar note, and was so understood both by the bank and Gardner G. Smith, and that it was a loan that came within the original agreement as to loans for which the four hundred dollar note was to stand as collateral security.

The witness stated that the four hundred dollar note was not entered on any of the books of the bank, but that the three hundred dollars advanced at the date of the three hundred dollar note was entered on the cash book of the bank ; that the bank did not very frequently discount notes at ten days or on demand, but that they sometimes did so.

The witness stated that at the time Gardner G. Smith delivered the four hundred dollar note, he understood that John Smith was surety for Gardner G. Smith on the note; that he had no recollection of saying anything to John Smith about the four hundred dollar note, and no knowledge that John Smith knew that the bank held such a note till just before the expiration of six years from the date of the three hundred dollar note, when he showed the note to John Smith and asked him to renew the four hundred dollar note, claiming of him only the amount due upon the three hundred dollar note, which he declined to do, expressing surprise that the bank held any such note.

The witness testified that this three hundred dollars and interest on it was all that Gardner G. Smith owed the bank at his death, all other claims against him having been paid before his death or before the commencement of this suit, except a debt against a firm

of which Gardner G. Smith was a member, and which debt had no connection with this suit.

It was agreed by the counsel that Gardner G. Smith died April 19, 1850.

This witness also testified that the four hundred dollar note was in the usual form of notes discounted by the bank.

Upon this testimony the court charged the jury if they should find that the defendant was merely a surety on the four hundred dollar note for Gardner G. Smith, and that that fact was known by the bank at the time they received it, and that the defendant had no notice of the arrangement between Gardner G. Smith and the bank in relation to the note other than what might be implied from the terms of the note itself, the plaintiffs could neither renew nor create a liability against the surety by advancing money on the credit of the four hundred dollar note at the date of the three hundred dollar note so long after the date and after maturity of the former.

Exceptions by the plaintiffs.

*George F. Houghton* and *H. R. Beardsley*, for the plaintiffs.

*B. H. & E. M. Smalley* and *W. W. White*, for the defendant.

The opinion of the court was delivered by

BENNETT, J.   The plaintiffs seek to recover on the note now in suit three hundred dollars, and the interest on it, which sum the bank advanced to Gardner G. Smith on his individual note, dated some six months after the note now in suit, and the question is whether the bank can recover on this note against the defendant upon the facts, which upon the bill of exceptions, we are to assume as established.   Under the uniform course of decisions in this state it was competent to show by parol, that the defendant was but a surety on this note, and if this be known to the holder of the paper, he stands on the same ground he would have done if the defendant had affixed to his name the word " surety."   A change made in the contract of suretyship between the creditor and debtor without the assent of the surety, whether prejudicial to him or not, discharges the surety.   *Bonar* v. *McDonald*, 1 English Law and

Equity 1; *Miller* v. *Stewart*, 9 Wheaton 680. The first inquiry then is, what was the contract of suretyship in this case? The note is for four hundred dollars, payable to the bank *in ten days* from date, and this fact raises the presumption that when it matured the principal debtor was to take care of it, and there is nothing in the case to rebut this presumption. Though it is to be taken that the principal agreed with the bank that they should hold the four hundred dollar note *as a continuing guaranty* to secure what they called minute loans to the principal, yet this was not by the assent of the surety. The liability of the surety upon the the face of the note is for the payment of four hundred dollars at *the end of ten days.* This is quite a different thing from standing as a continuing guarantor.

The case of *Bloxsome et al.* v. *Neal et al.*, decided in King's Bench in 1832, cited in note to Chitty on Bills 219, 220, marginal pagings, 12th American Edition from the 9th London Edition, is strongly in point.

That was a case against two signers of a note given *to* secure the balance of an account kept with the plaintiffs who were bankers, by a firm engaged in the lumber business, who subsequently failed.

The facts were, that there being a balance due the plaintiffs of one thousand pounds, as they claimed, they refused *to* continue *the* account without security, and that consequently the note in question was given, *payable in nine months.* When the note matured the balance was reduced to six hundred pounds, and the note was not presented for payment, but the plaintiffs continued to hold the the note and went on discounting bills for the lumber merchants, and receiving bills from the firm, which the plaintiffs put *to* their credit as cash. After this the bankers required fresh security, and one of the firm proposed that the note in question should continue as a guaranty for *future advances*, and Porter, one of the lumber firm testified that the note was given as a security for the one thousand pounds then due, and which were to be paid off in bills paid in upon the running account, and that when the note became due the balance was reduced and was ultimately turned in their favor. Subsequently the balance was against them, and the bankers refusing to go on, he (Porter) proposed that the note should

continue as a general guaranty, but without the authority of the defendants. There was some evidence in the case tending to show that the note was originally intended to be a *continuing guaranty.*

The case was put to the jury to find whether the note was given to secure a *specific balance due at that time* which had been reduced by bills, provided the bills by the agreement were to be treated as cash; and secondly whether it was intended to be paid in cash or given up when due, or was to be a *continuing guaranty.* Lord TENTERDEN, in his charge to the jury, told them *that the fact of the bill being made payable at nine months, raised a presumption that it was to be paid or given up when due,* and that if Porter had agreed with the bankers that the note should be a continuing guaranty, it did not appear that he had any authority from the defendants to do so, and if he had not, they would not be liable. Verdict being for the defendants, and a rule *nisi* for a new trial having been obtained, it was, it is true, made absolute, not upon the ground that the charge was theoretically incorrect, but simply upon the ground that it was not clear upon Porter's own evidence that the balance was in favor of his firm, at the time the note matured.

The case of *Prescott* v. *Brinsley et al.,* 6 Cushing 234, proceeds upon the same principle. The note was payable to the Appleton Bank, and two of the signers were sureties and appeared as such on the face of the note, and it was held the principal could not bind the sureties by the sale of the note to some other person, without their consent, the purchaser being chargeable with notice of the suretyship, and that the note was intended to be used at the bank. The case of the *Bank of Burlington* v. *Beach,* 1 Aiken 62, has no analogy to the case at bar. There the court, from the facts in the case, considered that the bank had adopted the payment made by Wood & Co. upon the note, so that for the purposes of that suit, the acts of Wood & Co. were regarded as the acts of the bank. If John Smith is to stand as a continuing guarantor on this note, to secure the payment of minute loans, made to the principal, it is binding him to a contract which he never made. The law merchant cannot help the plaintiffs. They stand as promissees of the note, and they took it with notice that the defendant was but a surety, and to permit them without the

assent of the surety to turn this note into a standing guaranty would be a gross fraud upon the surety. There is no pretense that the plaintiffs ever gave notice to the defendant that they were holding this as a continuing guaranty, until some six years after the advancements were made to the principal. The cases relied upon by the plaintiffs are not like the one at bar.

In *Brush* v. *Scribner*, 11 Conn. 388, the paper was negotiated to a *bona fide* holder for value, and without notice in the due course of commercial business. The note in the case of *The Commercial Bank* v. *French* was payable *on demand* and the court put the case upon that ground, and say that it was not to be presumed the note was to be discounted, or that payment was to be demanded immediately, and that as no time was fixed it could not be considered a prolongation of credit.

In *Atwood* v. *Crowdie et al.* 2 Eng. Common Law 478, the defendants were accommodation acceptors, and the bill was sent to the plaintiffs *on account* by the indorsers, and that, Lord ELLENBOROUGH said, meant a *floating account* between the indorsers and the holders of the bill, and that although the balance was in favor of the indorsers when the bill matured and might have been then reclaimed, yet, by the indorsers permitting the bill to remain in the hands of the holders, it would be subject to fresh advances made to the indorsers by the holders when the balance turned in favor of the holders.

On the whole, we think the judgment below should be affirmed.