## HARTMAN v. BURLINGAME AND LATHAM.

Where a party signs a joint and several promissory note, he is not entitled to notice of demand and non-payment, though in fact he signed as surety, and such fact was known to the payee.

The failure of the holder of a note to sue when requested by a surety, does not operate to discharge the liability of the latter.

If the surety desires to protect himself, he must pay the debt and proceed against the principal, or apply to a Court of Equity to compel the holder to proceed against the principal.

APPEAL from the District Court of the Tenth Judicial District, County of Yuba.

This action was brought upon the following promissory note:

" $500.                              MARYSVILLE, February 25, 1856.
"On or before the twenty-fifth day of May, A. D. 1856, we promise to pay to Isaac Hartman, or order, for value received,

five hundred dollars, with interest at the rate of three per cent. per month until paid.

[Signed]    " J. Burlingame.
            " W. B. Latham, Jr."

Service was had only on Latham. Latham, in his separate answer, denies the indebtedness, and avers that he signed the note as surety for Burlingame, that he received no consideration whatever for which the note was given, and that the plaintiff, at the time of the execution and delivery of the note, knew the same; that plaintiff has wholly failed to demand payment of Burlingame at the time when said note fell due, and that plaintiff has also failed to give this defendant notice of the non-payment of the note.

The answer further charges that defendant Latham, after the note fell due, requested plaintiff to bring suit on said note by attachment against defendant Burlingame; that plaintiff neglected to do so; that Burlingame had property, liable to attachment at the time, sufficient to discharge the note, and that he (Burlingame) was in failing circumstances, and plaintiff was fully informed, and that Burlingame did fail shortly after, and became insolvent.

The Court below finds that Latham, though he appears on the note as principal in fact, signed as surety, and that this fact was known to plaintiff. That on the thirteenth of December, some time after the maturity of the note, Latham, fearing that Burlingame was about to become insolvent, called on plaintiff, and requested him to sue on the note, offering to point out property sufficient to satisfy it; but that plaintiff delayed bringing suit till the twenty-sixth of December; that between the thirteenth and twenty-sixth of December, Burlingame conveyed property to certain parties for a consideration of $2000, greatly more than the amount of the note; and, from these circumstances, the Court finds that Burlingame was solvent on the thirteenth, and was insolvent on the twenty-sixth, when the suit of plaintiff was instituted.

Plaintiff had judgment, and the defendant, Latham, appealed to this Court.

*Bryan & Filkins* for Appellant.

We are surety, and they fail to show that they made demand, at the maturity of the note, upon the principal, and gave us notice of dishonor.

1. This we claim must be done under Bryan *v.* Berry et al., 6 Cal., 394.

Our Supreme Court have lately held, in the above case, that when it appears that a party is a surety upon a note, that his is a "secondary liability wherever his name may be placed upon

the note, and that he is to be treated as an endorser, and entitled to demand on principal, and notice of dishonor, in order to be held."

But if the Court is doubtful or unwilling to receive this as law, we then proceed:

2. " That a demand by a surety upon the holder of the note to sue his principal, in order to save the surety, when refused or neglected to be performed, is an absolute discharge of the surety, when followed by the insolvency of the principal." Pain v. Packard, 13 Johnson, 174; King v. Baldwin, 17 Johnson, 388–389; Manchester Iron Manufacturing Company v. Sweeting, 10 Wend., 163 ; Herrick v. Borst & Warwick, 4 Hill, 650; Strader v. Houghton, 9 Porter, Ala.; Bolton v. Lundy, 6 Missouri; Town v. Riddell, 2 Alabama, 694.

3. The Court will perceive that the rule is broadly and elaborately laid down in the case above, in 17 Johnson, and in the case in 4 Hill, that when the surety makes the demand to sue, and the principal in the note is not insolvent at the time, but becomes so afterwards, and the surety is endangered thereby, then that the surety is absolutely discharged from all liability, if the owner and holder of the note has failed to sue in time.

He has failed to use proper diligence, and the law says that when " one of the two innocent parties must suffer, let it be him who, by his neglect, is most at fault."

There has, I admit, been much conflict upon this doctrine, in many of the old States.

There are old cases in Massachusetts, and some other States, holding a contrary doctrine.

But the modern rule is, to hold the payee of the note to the exercise of proper diligence, and if he allows the property, as well as the person of the principal (as in this case) to escape, he can not, in equity and good conscience, be allowed to hold the surety for the debt, in the face of the surety's own protest, and express demand to sue.

Our Supreme Court adopt this modern reasoning, in Bryan v. Berry et al., (above,) not being hampered by the old rules of the common law, and hold him no further liable than a common endorser, and he is discharged if no demand is made when the note becomes due, and no notice of non-payment is given the surety.

We, then, claim that Latham is released from liability, and that the only remedy of the plaintiff is against the principal in the note.

1. Because he is a surety, and the note had long since been due, and there was no proof of demand, and notice of non-payment.

2. Because he can not be held under the proof he has made of his express demand upon plaintiff to sue, and the failure of the

plaintiff to sue accordingly, and insolvency of the principal following.

*E. D. Wheeler* for Respondent.

If the note had shown upon its face, that Latham signed as a surety, then, under the decisions of this Court, he would have been entitled to notice of demand and protest: but, inasmuch as there is no qualification whatever as to the capacity in which he signed, apparent on the face of the note, I can not, for a moment, believe that this Court will adjudge that notice was necessary to fix his liability. Because, when Latham signed the note, unqualifiedly, he virtually said to the plaintiff, " Treat me as a principal; I do not require, nor shall I expect, notice of demand and protest; I have signed as a principal, putting myself upon an even footing with Burlingame. The law says, if I qualify my signature by adding the word 'surety' to it, then you must give me notice; but I do not thus qualify it, and therefore waive my right to notice of demand and non-payment." It is readily perceived, that if Latham is now permitted to insist upon notice, it is rendering the decisions of Courts auxiliary to the worst kind of frauds, because Latham voluntarily executed and delivered the note, divested of any mark, badge, or sign, tending to show that he intended to occupy a secondary position on the obligation. It is reasonable, then, that Latham should abide by the consequences of his own act, for he had both the power and opportunity to define his capacity on the face of the note; but, instead of stating on the face of the note that he designed to occupy a secondary position, he plainly says his position is primary; and, of course, will mislead the holder if he is afterward permitted to show by parol that he intended just the reverse of what his written contract declares. The extent to which this Court has hitherto gone is, that where a party, on the face of the note, has added "surety" or "security" to his signature, he is entitled to notice; but in no instance is it held, that when these qualifying words do not appear on the instrument itself, that the party is entitled to notice. If such were the law, then the distinction between parol and written agreements would be at an end; and the embodying of the terms of a contract in a solemn written agreement becomes an idle formality. Without doubt, this is the general rule of law upon the subject:

" That written agreements, whether specialties or simple contracts, and whether within or without the Statute of Frauds, are not to be contradicted, varied, or materially affected by oral testimony." Erwin *v.* Sanders, 1 Cow., 250; Payne *v.* Ladue, 1 Hill, 116; Hunt *v.* Adams, 7 Mass., 518, et seq.; Stackpole *v.* Arnold, 11 Mass., 27, et seq.; Thompson *v.* Ketcham, 8 John., 190; Fitzhugh *v.* Runyon, ib., 375; Wells *v.* Baldwin, 18 John., 45.

All of the cases above cited, except the last one, are cases on

Hartman *v.* Burlingame.

promissory notes, where the makers, as in this case, have, in one way or another, sought to evade the payment of their obligations by the introduction of parol proof, to show that the original written contract was different from what its face declared it to be; and, in every instance, the Court most emphatically refuse to hear such evidence, but strictly adhered to the rule as quoted above. It is true the rule has some exceptions, but this case does not come within the exception. The exceptions are said to be fraud, want or failure of consideration, enlargement of time for the performance, waiver of performance, mistake, or ambiguity. None of these exist is this case. The suit is on a plain, simple, and complete note, by the terms of which both of the appellants unconditionally promise to pay the respondent a certain sum of money. And now to permit this written agreement, thus plain and simple upon its face, to be contradicted by parol, and the whole legal effect thereof absolutely canceled, is certainly at variance with the settled rules of evidence, and the decisions of this Court. Sayre *v.* Nichols, 7 Cal. Rep., 535. In one of the cases cited in the opinion, (11 Mass., 53,) an agent was held responsible on a bill of exchange, because he did not define his capacity on the face of the bill, notwithstanding it was shown by parol that the payees of the bill knew at the time that the drawer was, in fact, acting in the capacity of an agent. The result of the cases is thus summed up by Mr. Justice Burnett, in the case above cited :

" The true result of these cases would then seem to be this : that the capacity in which the party acted in signing his name to an instrument, must appear alone upon the face of the instrument itself, and, if not so apparent, he must be presumed to have acted in his own individual capacity, and be held responsible accordingly."

TERRY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

Defendant insists :

1. That Latham was, in fact, liable as surety only, and was entitled to notice of demand and non-payment.

2. That the failure of plaintiff to sue when requested by surety, operated to discharge his liability.

The first point is settled by the case of Humphreys *v.* Yale, (5 Cal., 173.) The second we do not think sustained by authority.

The doctrine of the English Courts is, that a security can not be discharged by the mere neglect of the holder to sue; if he desires to protect himself, he must pay the debt, and proceed against the principal; or, he may apply to a Court of Equity, to compel the holder to proceed against the principal.

A different rule was asserted in New York, in Payne *v.* Pack-

ard, (13 John.,) and King v. Baldwin, (17 John.,) where it was held that the neglect of the holder of a note to sue when requested, discharged the surety; but this doctrine was expressly overruled in Barst v. Henrick, (4 Hill;) and repudiated as authority by this Court in Humphreys v. Yale.

In Barst v. Henrick, the Court held that a neglect to sue after request, would discharge the surety, provided the principal was solvent at the time of the request, and became insolvent afterwards, and before the institution of the suit.

We are inclined to doubt the correctness of the rule here laid down, but if we admit the authority of the case, we do not think the facts disclosed by the record bring this case within the rule.

The finding of insolvency of the principal, at the time of instituting the suit, is inconsistent with the other findings of the Court, and the premises in which the finding is based, do not sustain the conclusion.

The party was solvent on the thirteenth. It does not appear that he afterwards met with any loss. No debt is incurred, no attachment or execution is levied on his property. The fact on which the finding is based, is that Burlingame, after the thirteenth, sold property for a consideration of $2,000. How the sale of property for a valuable consideration, should, in so short a period, cause the insolvency of the party, the record does not disclose, and we are unable to discover.

Judgment affirmed, with ten per cent. damages and costs.