GEORGE M. KENNEDY *et al.*, EXECUTORS, ETC.

*v.*

JOHN EVANS.

1. SURETY — *release* — *extension of time to principal.* An extension of the time of payment of a note, by the holder to the principal debtor, without the assent of the surety, until the principal becomes insolvent, will operate as a release of the surety.

2. RELEASE OF SURETY — *available in equity.* Such defense can be made available in equity, whether the fact of suretyship appears on the face of the instrument or not.

3. SAME — *available at law.* And the same rule has been applied in an action at law, in *Flynn* v. *Mudd & Hughes et al.*, 27 Ill. 323.

4. PAROL EVIDENCE — *suretyship.* So, when relief is sought upon that ground, it is competent to prove that the party was only a surety, by evidence *aliunde*, if it does not appear from the face of the instrument itself.

5. WITNESS — *competency* — *interest.* A defendant in chancery called a co-defendant as a witness in his behalf, but the witness' liability for costs was deemed such a disqualifying interest as to render him incompetent, except so far as his evidence had reference to the question of usury.

6. Securities for costs, and upon appeal, replevin, injunction, and all such bonds, although more remotely liable for costs or damages, are incompetent as witnesses.

Kennedy et al., Executors, etc. v. Evans.

7. Where a judgment at law has been rendered against a principal and his surety, and the surety seeks relief in equity against the judgment, on the ground of an extension of the time of payment of the debt having been given to the principal debtor, before the judgment, the principal defendant in the judgment is a competent witness in behalf of his surety in such suit in equity.

8. Where the interest of a witness is equally balanced, he is competent to testify for every purpose.

9. WITNESS — *release to render competent.* A defendant in chancery desiring to call his co-defendant as a witness in his behalf, sought to remove his interest in the suit, which arose by reason of his liability for costs, by giving him a bond of indemnity against loss. But this did not avail. Such indemnity was not regarded a release.

10. POWER OF ATTORNEY TO CONFESS JUDGMENT — *stipulation not to interfere with judgment.* A judgment was entered against the principal and surety in a note, by confession upon a power of attorney executed by them, which provided *that no bill in equity should be filed to interfere in any manner with the operation of the judgment entered by virtue thereof.* Subsequently, the surety filed his bill in equity for relief against the judgment on the ground that he was released by reason of the payee extending the time of payment to the principal maker, before the entry of the judgment, without the assent of the surety. The Circuit Court granted the relief prayed for, and the Supreme Court affirmed the decree.

11. JUDGMENT AGAINST SEVERAL — *whether all shall remain bound.* A judgment at law against two, may be annulled by decree of a court of chancery, as to one, and remain binding as to the other defendant.

WRIT OF ERROR to the Superior Court of Chicago.

John Evans exhibited his bill in chancery in the court below, on the 9th day of February, 1860, against George M. Kennedy, Alfred A. Hallett, and Willard H. Downer, executors of the last will and testament of John D. Norton, deceased, and Edmund Aiken, John W. Waughop, George W. Lay, and John Gray.

The bill set forth, substantially, that Waughop, desiring to borrow money from Edmund Aiken and John D. Norton, who were, at the time, doing business in Chicago under the name of Aiken & Norton, the latter requested the complainant, Evans, to sign a note with Waughop, as security ; that in pursuance of such request, the complainant did sign with Waughop, a note for $1,000, dated September 4, 1858, pay-

able to the order of said Aiken & Norton, thirty days after its date. That at the same time the complainant, with Waughop, executed a letter of attorney in the usual form, authorizing a judgment to be confessed upon said note at any time after its maturity; and that the note and letter of attorney were at once delivered to Aiken & Norton, who thereon paid to Waughop, as a loan, the sum of $1,000, less the interest on that amount, for thirty days, at two per cent. per month; but that the note, as far as the complainant was concerned, was an accommodation note, and no part of the money advanced thereon was ever received by him, or designed to come into his hands.

The bill alleged that at the maturity of the note, it remaining unpaid, Aiken & Norton agreed with Waughop to extend the time of payment for thirty days, in consideration that Waughop would pay up the interest on the amount of the note in advance for thirty days, at two per cent. per month, which was done, and the note allowed by Aiken & Norton to lie over for said thirty days. That from time to time, further extensions were agreed upon between Aiken & Norton and Waughop, upon similar consideration, until about the third day of February, 1860, when Aiken & Norton caused a judgment to be entered upon the note in the Superior Court of Chicago, upon confession under the said letter of attorney.

The complainant alleged that the several extensions of the time of payment of the note, and the entry of the judgment thereon, were without his knowledge or assent.

That an execution had been sued out upon said judgment, and was then in the hands of the sheriff of Cook county, who threatened to levy it upon the property of the complainant.

The complainant charged that by reason of the extensions before stated, the judgment was void as to him; and if valid, it ought to be reduced by the sums paid by Waughop for extensions, and he be required to pay only the principal with legal interest.

That Aiken & Norton had full knowledge, at the time they received the note, that complainant had signed it as security only.

It was also set forth in the bill, that in October, 1859, Waughop made an assignment to Lay for the benefit of his creditors, and by the assignment this note was placed in the class of preferred indebtedness; and alleging that the property assigned was sufficient to pay all the preferred debts, including the note; and the complainant claimed that Aiken & Norton ought to be compelled first to exhaust said assets; or, if he be liable on said judgment, and he thought otherwise, he should be subrogated to Aiken & Norton's rights under the assignment.

The complainant prayed for an injunction against any further proceedings under the judgment or execution — that the judgment be canceled as to him, etc.

An injunction was granted according to the prayer of the bill. A demurrer to the bill being overruled, the defendants answered.

The tenor of the answers was such as to put the complainant upon the proof of his allegations, except as to the fact of the entering of the judgment at law, which was admitted.

Upon the hearing, the complainant read in evidence the deposition of Waughop, the principal maker of the note upon which the judgment at law was entered, subject to the defendant's objections as to the competency of the witness, and the admissibility of his evidence.

On the part of the defense, the deposition of the defendant, Edmund Aiken, was read, but as he was held not to be a competent witness, on the ground of interest, it is not important to consider his testimony, except that portion of it having reference to the question of competency. Touching that question his testimony was as follows:

I have no interest in this suit. In April, 1860, previous to taking in a new partner, Mr. Norton and I divided certain claims of the firm which were in litigation, and for that reason we did not wish to transfer to the new firm. In that division, Mr. Norton took this claim, and I took another of equal amount. He gave me an indemnifying bond, and I think I gave him one. The firm of Aiken & Norton consisted of John D. Norton and myself, until May, 1860, when Jonathan

Beers came into the firm. (The indemnifying bond given by Norton to Aiken, was dated May 1, 1860, conditioned to save harmless Aiken from all costs, charges, loss, damages or injury of any kind, arising or accruing from or out of these proceedings, or anything connected therewith, or from the said judgment, or anything connected therewith).

Upon cross-examination :

By interest in this suit I understand, being entitled to receive any moneys collected of Evans or Waughop, or being liable for costs without indemnification. I don't recollect who first proposed the assigning of my interest in this suit. This claim, and another of equal amount, were in litigation. Mr. Norton and I thought fit to divide them, and that Mr. Norton might, if he desired, avail himself of my testimony, if necessary, in establishing the facts. The transfer was made the day it bears date. I had made Mr. Norton acquainted with the facts in the case. I think he also knew the statements of complainant's bill. I think I had told him they were not true.

I should feel bound in honor to do what was just to Mr. Norton's estate, if it should appear that I had misrepresented the facts, to his injury.

The direct examination being resumed, the witness continued :

Norton took an assignment of the judgment at his own risk, and I took the assignment of the other claims in the same manner. There was no choice between the two claims as to value.

The evidence introduced was quite voluminous, and established the material allegations in the bill to be true, and as the court below found, that complainant signed the notes as surety for Waughop ; that this fact was known to Aiken & Norton when they received said notes ; that upon the receipt of the notes, Aiken & Norton, made a loan to Waughop of $1,000, reserving usurious interest at two per cent. per month for thirty and sixty days ; that the money was paid to Waughop, and used by him for his own purposes, no part being used by or for complainant ; that at the maturity of the

thirty-day note, Aiken & Norton, without the knowledge or consent of complainant, in consideration of $20 paid by Waughop for interest for the twenty days then next following, extended the time of payment of said note for thirty days. And thereupon it was ordered and decreed, that the judgment rendered upon said note in said bill specified, as against complainant, be and was thereby vacated and annulled, and that defendants Aiken, Kennedy, Hallet, and Downer, executors, etc.; be perpetually enjoined from collecting, or attempting to collect the same, by execution or otherwise, against complainant. Further ordered, that Aiken, Kennedy, Hallett and Downer pay the costs of this suit.

The power of attorney by virtue of which the judgment at law was confessed, contained a clause authorizing the attorney to file a *cognovit* for the amount that might be due upon the notes therein mentioned, with an agreement therein, that no writ of error or appeal should be prosecuted upon the judgment entered by virtue thereof, nor any bill in equity filed to interfere in any manner with the operation of said judgment.

The executors of John D. Norton, deceased, upon the rendition of the decree, sued out this writ of error. The questions presented upon the record, are :

*First.* Whether the fact of the suretyship of Evans, not appearing on the face of the notes, could be shown by evidence *aliunde ;*

*Second.* Whether the material allegations in the bill were proven ;

*Third.* Whether the extensions of time of payment to the principal, operated to release the surety ;

*Fourth.* Whether the surety can make such defense available in equity ;

*Fifth.* As to the competency of Waughop as a witness ; and

*Sixth.* As to the competency of Aiken.

Messrs. WALKER & THOMAS, for the plaintiffs in error.

*First.* The demurrer to the bill should have been sustained.

I. Complainant signing the note as principal, cannot now

claim the benefit of suretyship. The question is not, what were the facts as between him and Waughop, but what position did he assume toward the payees? 19 Conn. 105; 22 Ill. 333; 1 Scam. 494; 3 Scam. 566; 2 Gilm. 266; 5 Taunt. 192; 2 Peter's U. S. 180; 2 Dutcher, 452; 21 E. C. L. 247.

II. He is *estopped* by the warrant of attorney *under seal*, which expressly admits joint liability, authorizes a joint judgment, and waives all defenses, *legal or equitable*, and agrees that no bill in equity shall be filed to interfere with the judgment. 1 McLean R. 389, 392; 10 Vermont, 585.

III. The warrant of attorney, as alleged, authorizes defendants to enter judgment " *any time after* the note became due." The time was left optional with them, and delay could not discharge surety—it was no departure from his express contract. 4 M. & W. 519; 1 McLean R. 392, 393; 6 Madd. Ch. R. 85; 5 Ohio R. 124; 8 Wheat. R. 211.

IV. The alleged extension was for a limited time, and could not have been pleaded in bar to suit on the note, and therefore no discharge of surety. 2 Gilm. 574; 13 Ill. 7; 4 Vermont, 104; 1 Parsons on Cont. 514; 6 Gray, 319; 17 Pick. 153.

V. It was a variation by parol of the warrant of attorney under seal, and ineffectual. 20 Ill. 101; 3 Mason, 446; 4 Vermont, 104; 7 E. C. L. 62.

VI. The contract for extension, as stated, was without consideration and void.

1. The sole consideration for the agreement to extend, was Waughop's agreement to pay, and payment of usury; but the agreement to pay usury was void: Chitty on Cont. 538; 2 Peters' R. 538; 2 Gilm. 96; 22 Pick. 189; 7 Martin, 463, 464; 22 Conn. 447; 32 Ala. 30.

And therefore no consideration for the extension. 1 Comst. 286; 5 Humph. 320; 10 Ind. 228; 5 Rich. Law, 47.

The payments made on such a contract, were, in law, payments on the principal, since by the statute of 1857, *all* the interest was, by the agreement to take usury, forfeited, and the creditor allowed to receive only the principal due. But such payments on the principal, are no consideration for extension. 16 Texas, 202.

2. This agreement did not "tie the hands of the creditor," for, being illegal, no action would lie for its breach. 15 Peters R. 471 ; 17 Pick. 153.

Nor would chancery specifically enforce it. 1 Turner & Russell, 370 ; 6 Humphrey R. 277 ; 3 M. & K. ; 3 Dels. M. & G. 923 ; 15 Sim. 346.

3. The complainant by his bill insists on the penalty of usury ; he cannot at the same time claim that the agreement based on usury is valid. 23 Vermont, 150; 29 Barb. (S. C.) 409.

4. We are not estopped to set up the invalidity of the contract for extension, for the plaintiff, by his own pleading, shows its illegality, and claims the benefit of the statute. 2 Ld. Raym. 1553 ; 1 Tenn. R. 95.

VII. The bill upon the charge of usury is insufficient. It does not state that any or how much of the judgment is usurious. Scates' Comp., p. 147, sec. 11 ; 3 Scam. 333.

*Second.* Waughop was incompetent as a witness.

I. One object of the bill was to diminish the amount of the Aiken judgment by cutting out usury. On payment of the judgment so reduced, Evans would be entitled to satisfaction of it; but Waughop would be liable to him only for the amount *he paid.* He is therefore interested. 32 Vermont, 92 ; 9 Ind. 135 ; 8 Ind. 32.

II. If Evans be unsuccessful, Waughop will be liable over to him for costs of this suit. Parties on a bill to enjoin a judgment by confession, stand in the same position, as in defense where suit is brought in the ordinary way. 4 Hawks, 370 ; 11 Peters, 95 ; 7 Cranch, 206.

*Third.* Aiken was a competent witness.

I. Being party to the suit, of itself, no objection. 3 Binney, 313 ; 4 Scam. 139, 150.

II. Honorary obligation no objection. 1 Turner & Russell, 372 ; 1 Phil. Ev. 54, 55.

III. He was clearly competent on the question of usury. But the same testimony established or denied the usury and the extensions, item by item. The extension relied on and established by the decree, and the usury alleged to have been

17

then received, are both distinctly denied by Aiken, and the testimony is competent.

*Fourth.* There is no sufficient proof of suretyship.

I. No proof of the fact. 11 Metc. 287.

II. No proof that Aiken & Norton received the note from Evans *as surety.* 75 E. C. L. 55 ; 17 Com. Bench, 218 ; 2 Gilm. 266 ; 3 Scam. 566; 1 Scam. 494.

*Fifth.* There must be a *positive and express agreement,* for a *specific* time, on a *valuable* consideration, and the contract must be lawful. 3 Meriv. 272; 2 Gilm. 574. Neither is proved.

*Sixth.* The decree *vacates* the judgment as to Evans. But since a judgment is an entirety, the *whole* judgment is thereby nullified — which is clearly erroneous.

Messrs. CLARK, CORNELL & NORTON, for the defendant in error.

*First.* The demurrer to complainant's bill was properly overruled.

It is *assumed* by the plaintiffs in error that complainant signed the note as *principal.*

But the bill alleges, and the demurrer admits, that he signed it as *security only,* and at the request, and with the knowledge of the payees.

But, conceding that the note, upon its face, contained nothing to show that the complainant signed it as security, still the law will permit him to prove this *aliunde,* and that he has been discharged from his contract by the acts of the payees. *Harris* v. *Brooks,* 21 Pick. 195 ; *Carpenter* v. *King,* 9 Met. 511 ; *Orvis* v. *Newell,* 17 Conn. 97; *Mariner's Bank* v. *Abbott,* 28 Me. 280 ; *Smith* v. *Bing,* 3 Ohio, 185 ; *Bank* v. *Hoge,* 6 ib. 19; *Davis* v. *Barrington,* 30 N. H. 517; *Kelley* v. *Gillaspie,* 12 Iowa, 55.

Such proof does not change or vary the terms of the written contract, but only establishes a collateral fact, and rebuts a presumption which would otherwise attach *as to the relation of the promissors to each other,* and not to the payees.

This was allowed in *Pitts* v. *Magie*, 24 Ill. 610, and numerous other cases, which have received the sanction and approval of this court.

It is contended that the complainant is estopped by the warrant of attorney *under seal*, to make this defense.

But, the clause in the warrant of attorney which " waives all defenses," and "agrees that no bill in equity shall be filed to interfere with the judgment," must be held to have been given, upon the implied condition, that the payees would do nothing to change the terms of the contract, or prejudice complainant's rights under it, without his consent. If this condition is broken, the agreement is no longer binding.

The rule, that an extension of the time of payment for a limited period cannot be pleaded in bar to the suit, applies only to parties who contract as principals, and the reason of the rule is, that if the issue upon such a plea be found for the defendant, it would forever bar another action upon the contract.

But this reason fails, when a surety pleads a valid agreement, made with his principal, to extend the time of payment without his consent. " *Cessante ratione, cessat et lex.*"

In the case of *Veazie* v. *Carr*, 3 Allen, 14, it is said by the Supreme Court of Massachusetts, that by a valid agreement to extend the time of payment, is meant, " an agreement, for the breach of which, the principal has a remedy either at law or in equity," *not* an agreement which the principal can " plead in bar to a suit on the note " or bond.

It will not be denied, that any valid agreement between the creditor and the principal debtor, without the consent of the surety, to extend the time of payment for a definite period, discharges the latter from his liability—the creditor knowing or having notice of his relation as surety. *Davis* v. *The People*, 1 Gilm. 319 ; *The People* v. *McHatton*, 2 Gilm. 638 ; *Gardner* v. *Watson*, 13 Ill. 347.

But it is contended by the plaintiffs in error, that the contract to extend, as stated in the bill, was void, because the consideration was the payment of usurious interest, rendering the agreement invalid.

The payment of an usurious interest in advance, is a good consideration for an agreement to extend.

The cases of *Warner* v. *Campbell*, 26 Ill. 282, and *Flynn* v. *Mudd*, 27 Ill. 323, are in point, and decisive of the question.

And such is the general current of authorities. *Kenningham* v. *Bedford*, 1 B.·Monroe, 325; *Austin* v. *Dorwin*, 21 Vermont, 38; *Turrill* v. *Boynton*, 23 ib. 142; *Vilas* v. *Jones*, 10 Paige, 76; *Draper* v. *Trescott*, 29 Barb. 401; *Bank* v. *Woodward*, 5 N. H. 106; *Wheat* v. *Kendall*, 6 N. H. 504; *Dickerson* v. *Board of Commissioners*, 6 Ind. 128; *Lime Rock Bank* v. *Mallett*, 42 Me. 349.

The case in 1 Comstock, 286, cited by the plaintiffs in error, so far as it touches this question, is *obiter*, and is expressly overruled in *Draper* v. *Prescott*, 29 Barbour, 401.

It is, therefore, not true that complainant "insists on the *penalty* of usury," as stated by plaintiffs.

The court, therefore, did not err in overruling the demurrer to complainant's bill.

*Second.* As to the competency of Waughop as a witness, see the case of *Miller* v. *McCan*, 7 Paige Ch. R. 452, 457, which is fully in point, and if it is good law, disposes of it.

To the same effect are also *Allison* v. *Allison*, 7 Dana (Ky.) R. 91; *Fulton Bank* v. *N. Y. & S. Canal Co.*, 4 Paige, 127; *Kenningham* v. *Bedford*, 1 B. Mon. 325.

*Third.* Aiken was not a competent witness. He is not only a party to the suit, but the one of all others chiefly interested. He transacted the business in its origin, and its various stages all through, and cannot but feel a deep interest in the result. Moreover, he is liable for costs in the first instance, even though he has his remedy over on his bond of indemnity.

The fact of· suretyship is amply proven, and a valid agreement between the creditor and the principal debtor to extend the time of payment.

Mr. Justice Walker delivered the opinion of the Court.

The first objection urged against the decree, is that the court permitted complainant to show by evidence, outside of the note itself, that he was only security. The note does not disclose the relation he bore to the contract, whether principal or security. In Burge on Suretyship, 211, it is said, that to enable a surety to avail himself of the defense, that time was given to the principal, in a court of law, it must appear on the face of the instrument, that he is such surety. If two are bound as principals, when one in fact is only a surety, and time has been given to the principal debtor, the surety cannot obtain relief at law, although it will be granted in equity. And *Rees* v. *Benington*, 2 Ves., Jr. 540, is referred to in support of the doctrine. It will also be found, that *King* v. *Baldwin*, 2 Johns. Ch. R. 254; *Miller* v. *McCan*, 7 Paige, 451, and *Clark* v. *Patton*, 4 J. J. Marsh. 33, all fully support the doctrine, that in equity, relief will be granted although it does not appear from the note. A large number of other cases might be referred to in support of the rule. In fact, the rule is universally recognized and acted upon by the courts on both sides of the Atlantic, that courts of equity will relieve, whether it appears from the note or otherwise, that the party was only a surety, and time has been given to the principal without his consent. And we have applied the same rule in actions at law. *Flynn* v. *Mudd et al.*, 27 Ill. 323.

The question then arises, whether the defendant in error, as he had the right to do, has shown that he was only a surety on this note, and that further time for payment was given the principal debtor, without the assent of the security. If Waughop is to be credited, the facts are fully established. But it is urged that he is incompetent to prove any fact but usury, because he was a party to the judgment. This is a contest between other parties, in no wise affecting his interest. If complainant is relieved from the payment of the judgment, still Waughop would remain liable for its payment to plaintiffs in the judgment, and if the bill is dismissed, his liability

is . still the same, neither increased nor diminished. His interest was equally balanced, and he was a competent witness for every purpose.

The question is also presented, whether Aiken, one of the plaintiffs in the judgment sought to be enjoined, was a competent witness for the defendants, by whom he was called. He was also a party to this record, and, as such, was liable for costs. This is held to be a disqualifying interest. Securities for costs, on appeal, replevin, injunction and all such bonds, are held incompetent, although more remotely liable for costs or damages. In such cases, it is the interest of the party thus held, that judgment should be so recovered, as to relieve them from liability. Nor can it make any difference, that he holds Norton's bond to indemnify him against loss. It is not a release, and it leaves him liable to pay in the first instance with his remedy over. His testimony should have been, and no doubt was, disregarded by the court below, except in so far as it related to usurious interest.

Nor do we regard the evidence of Chapman and Smith as overcoming that of Waughop. They only know, that such money was paid, as was credited upon the books. Although they say, that it was not paid on some of the occasions to which Waughop refers, they must be understood as meaning, that it was not paid to them, and they knew of no such payments. Waughop testifies, that it was paid to Aiken. This may have been and they not have known it. Chapman shows, that he was inattentive to the occurrences of which he testifies, when he says that Waughop remained at the bank after the interview with Mrs. Porter and Caroline Maynard, whilst they swear that he left the bank with them. It is true that this witness afterwards corrects this statement, and says that Waughop must have again returned. If he was mistaken in that statement, no reason is perceived why he might not be in another.

Complainant having proved that he was only a security on the note upon which the judgment was confessed, and that further time for its payment was given to the principal, with-

out complainant's consent, until the principal became insolvent, he was entitled to the decree which was rendered. And it must be affirmed.

*Decree affirmed.*