# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT,

AT THE

## AUGUST TERM, 1882.

JAMES M. SMITH, respondent, *v.* FREYLER ET AL., appellants.

COMMERCIAL LAW — *Suretyship — How proved — Its effect.* — The fact of suretyship may be proved by parol. Such proof does not change the contract, or the liability of the party making it.

It will not release a surety on a promissory note from his liability thereon, though the creditor fail or refuse to sue the principal debtor, after notice by the surety, even though at the time of such notice the principal debtor was good and afterwards became insolvent. The surety's remedy is to pay the note and himself sue the principal debtor.

*Appeal · from Third District, Lewis and Clarke County.*

J. H. SHOBER, for respondent.

E. W. & J. K. TOOLE, for appellants.

WADE, C. J.   This is an action upon a promissory note payable to plaintiff, and signed by defendants. Freyler, the answering defendant, alleges that he signed the note without consideration and as surety merely, which fact was known to the plaintiff. He further alleges that, at the time the note became due and payable, the principal debtor was solvent and able to pay the same, and that said surety demanded of the plaintiff, the payee of the

note, that he commence his suit and collect the same, which he neglected and refused to do, but, on the contrary, gave to the principal debtor further time in which to pay the note. He further alleges that the plaintiff theretofore agreed to and did release said surety from all liability on the note, and then and there told him to rest easy; that he would not look to him for the payment of the note, but that the principal was good enough, and that he would trust him for the payment thereof.

There was a motion for a judgment in favor of plaintiff, notwithstanding the answer, which was granted, and the defendant Freyler appeals.

Two questions are presented for determination, viz.: 1. Can a joint maker of a promissory note show by parol that he is surety merely, and that the payee had knowledge of such fact? 2. If, after the note becomes due, the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, is the surety thereby discharged?

1. The fact of suretyship may be proved by parol. There never was any dispute that such evidence was admissible in a court of equity, and since, under the code, equitable defenses are permitted in actions at law, all difficulties in the way of setting up such a defense, or in making proof of the same, are obviated. Such proof does not change the contract or the liability of the party making it. *Hubbard* v. *Gurney*, 64 N. Y. 457.

Says Shaw, C. J., in *Harris* v. *Brooks*, 21 Pick. 195: "So, when one of two promisors annexes the word 'principal' to his signature, and the other 'surety,' these descriptions do not affect the terms or the legal effect of the contract. They indicate the relation in which parties stand to each other, and give notice of such relation to the holder; but the fact of such relation, and notice of it to the holder, may, we think, be proved by extrinsic evidence. It is not to affect the terms of the contract, but

to prove a collateral fact and rebut a presumption." "When several parties execute a joint, or joint and several, promissory note, not under seal, and there is nothing in the note to indicate that any of them are sureties, if some of them are in fact sureties, and this is known to the creditor, such sureties may, both at law and in equity, show by parol that they were sureties, and that they were known to be such by the creditor, and they will be entitled to all the rights, privileges and immunities of sureties, and will be discharged by any act of the creditor, after he had knowledge of the fact of suretyship, which would discharge any other surety. The great weight of authority and of reason is in favor of the law as above stated." Brandt on Suretyship and Guaranty, sec. 17, referring to the following authorities: *Hegdon* v. *Bailey*, 26 Ga. 426; *Lime Rock Bank* v. *Mallett*, 34 Me. 427; id. 42 Me. 439; *Grafton Bank* v. *Kent*, 4 N. H. 221; *Matheson* v. *Jones*, 30 Ga. 306; *Peper* v. *Newcomer*, 25 Ia. 221; *Cummings* v. *Little*, 45 Me. 183; *Kelley* v. *Gillespie*, 12 Ia. 55; *Bank of St. Albans* v. *Smith*, 30 Vt. 148; *Davis* v. *Mikell,* 1 Free. Ch. (Miss.) 548; *Fraser* v. *McConnel*, 23 Ga. 368; *Connell* v. *Allen*, 13 Ia. 289; *Roberts* v. *Jenkins*, 19 La. 453; *Brown* v. *Haggerty*, 26 Ill. 469; *Bruce* v. *Edwards*, 1 Stew. (Ala.) 11: *Jones* v. *Flemming*, 15 La. 522; *Flynn* v. *Mudd*, 27 Ill. 323; *Bank of Mobile* v. *James*, 9 Ala. 949; *Kennedy* v. *Evans*, 31 Ill. 258; *Stewart* v. *Parker*, 55 Ga. 656; *Riley* v. *Gregg*, 16 Wis. 666; *Bank* v. *Wright*, 53 Mo. 153; *Bank* v. *Abbott*, 28 Me. 280. See, also, *Bank of Steubenville* v. *Hoge*, 6 Ohio, 17; *Davis* v. *Barrington*, 30 N. H. 517.

In *Howenstine* v. *Pacific R. R. Co.* 55 Mo. 33, the supreme court of Missouri, by Wagner, J., says: "It has frequently been decided, and the rule is settled, that it is perfectly competent for a surety to show in what capacity or character he signed the note."

The same doctrine is now held in England since the statute authorizing equitable defenses in actions at law.

See *Pooley* v. *Harradine*, 7 Ell. & Bl. 431; *Greenough* v. *McClelland*, 2 Ell. & Ell. 424; Brandt on Suretyship and Guaranty, p. 2, note.

We do not think that any of the decisions of the supreme court of California, relied on by appellants as stating a contrary doctrine, go to the extent of holding that it is not a good defense, in an action upon a promissory note, for one of the joint makers to allege and prove by parol that he signed the note as surety in fact with the knowledge of the payee, and that the payee, having such knowledge, by his act or omission, as, for instance, by his contract with the principal, without the consent of his surety, extended the time of payment for a definite period for a valuable consideration. See *Aud* v. *Magruder*, 10 Cal. 282; *Shriver* v. *Lovejoy*, 32 Cal. 575; *Darwin* v. *Pardon*, 34 Cal. 278; *Sichel* v. *Carillo*, 42 Cal. 493; *Harlow* v. *Ely*, 55 Cal. 344.

The decision in the case of *Aud* v. *Magruder*, to which the subsequent cases generally refer, was rendered to controvert and overrule a former decision of the same court in the case of *Bryan* v. *Berry*, 6 Cal. 394, in which case it had been assumed that the obligation of a surety was that of a mere guarantor or indorser, and it was held, as it is held everywhere, that the obligation of a surety to the payee or holder is the same as that of the principal, which obligation is to pay the note when it becomes due. No one ever supposed that this obligation could be escaped, unless the payee or holder with full knowledge, by some act or omission, released the surety. Mere proof that one of the parties signed as surety is not material, and is no defense, because such proof does not in any manner affect his contract or obligation. But if the payee or holder, knowing that one of the makers of the note was surety merely, enters into a valid contract with the principal, whereby the contract of the surety is varied or changed without his consent, then the surety is discharged. And in order to show that the surety has been

so discharged by the act of the payee or holder, it is competent to prove the fact of suretyship by parol, and that the payee or holder had knowledge of such fact when he entered into the new contract, whereby the surety was discharged. We do not think any decision in California holds to the contrary.

2. As to the second question, "the great majority of the cases on the subject hold, in the absence of any statutory provisions, that if, after the debt is due, the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not thereby discharged. The ground upon which these decisions rest is that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal." Brandt on Sur. and Guar. sec. 208, referring to *Jenkins* v. *Clarkson*, 7 Ohio, 72; *Carr* v. *Howard*, 2 Blackf. (Ind.) 190; *Halstead* v. *Brown*, 17 Ind. 202; *Ex'rs of Davis* v. *Rider*, 2 McLean, 451; *Davis* v. *Huggins*, 3 N. H. 231; *Pickett* v. *Land*, 2 Bailey (S. C.), 608; *Nichols* v. *McDowell*, 14 B. Mon. 5; *Frye* v. *Baker*, 4 Pick. 382; *Stout* v. *Ashton*, 5 T. B. Mon. 251; *Gage* v. *Bank*, 79 Ill. 62; *Dillon* v. *Holmes*, 5 Neb. 484; *Inkster* v. *Bank*, 30 Mich. 143; *Langdon* v. *Markle*, 48 Mo. 357; *Hartman* v. *Burlingame*, 9 Cal. 557; *Dane* v. *Corduan*, 24 Cal. 157; *Hickok* v. *Bank*, 35 Vt. 476; *Hogoboom* v. *Herrick*, 4 Vt. 131; *Coster* v. *Dunlap*, Rich. Eq. Cases, 77; *Croughton* v. *Duval*, 3 Call (Va.), 69; *Boulte* v. *Martin*, 16 La. 133; *Wyler* v. *Beck*, 13 Ill. 376; *Huey* v. *Reinly*, 5 Minn. 310; *Bizzell* v. *Smith*, 2 Dev. Eq. (N. C.) 27; *Thompson* v. *Brown*, 39 N. J. 2; *Hogshead* v. *Williams*, 55 Ind. 145; *Harris* v. *Newell*, 42 Wis. 627; *Pintard* v. *Davis*, 1 Spence (N. J.), 205; id. 1 Zabriskie (N. J.), 205.

When a surety signs a promissory note, his promise is absolute and unconditional to pay the same when it becomes due. And there is no escape from this promise

unless the payee or holder releases him. He does not promise that he will pay, if the payee or holder fails to collect the note by an action against the principal. The payee or holder does not receive the note with an implied promise that he will exhaust his remedy against the principal before proceeding against the surety. The obligation of the surety is to pay according to the terms of his promise, and he may protect himself by paying and then proceeding against the principal, and that is his remedy.

In the case of *Dane* v. *Corduan,* 24 Cal. 164, the court reviews the authorities and holds as follows: "As to the first question, admitting that a request and failure to prosecute has been shown, is the security exonerated from liability? Such a state of facts did not discharge the surety in England. His remedy was to pay the debt himself, and then sue the principal, or perhaps he might, by bill in chancery, compel the creditor to proceed against the principal. Chancellor Kent says: 'There is no case in the English law in which the personal application of the surety was held to be compulsory on the creditor at the hazard of discharging the surety.' 2 Johns. Ch. 562.

"There was a departure from the English rule on this subject in *Paine* v. *Packard,* 13 Johns. 175, and in that case the surety was held to be discharged. But this case was combatted and overruled by Chancellor Kent in *King* v. *Baldwin,* 2 Johns. Ch. 554. The case was appealed and in the court of errors reversed by the casting vote of the lieutenant-governor, who, like many senators voting on the question, was a layman. This fact detracts very much from the weight of the decision as authority, and the arguments of Chancellor Kent in the court of chancery, and of Senator Van Vechten in the court of errors, against the principle announced in the case, appear to us conclusive. The courts of New York have since followed the case of *King* v. *Baldwin,* while they have disapproved of the principle established by it. Mr. Jus-

tice Cowen, in commenting on this case in *Herrick* v. *Borst*, 4 Hill, 656, says: 'What principle such a defense should ever have found to stand upon in any court, it is difficult to see. It introduces a new term into the creditor's contract. It came into this court without precedent, was afterwards repudiated by a court of chancery, as it always has been both at law and in equity in England, but was restored on a tie vote in the court of errors, turned by the casting vote of a layman. Platt, J., and Yates, J., took that occasion to acknowledge that they had erred in *Paine* v. *Packard*, as Senator Van Vechten showed most conclusively that the whole court had done.' Yet he followed the case on the ground 'that the error had become inveterate.' The courts of Pennsylvania have also followed *King* v. *Baldwin*, but they assign as a reason for so doing, that in Pennsylvania there is no court of chancery, and the common-law courts exercise chancery powers to a very limited extent; that for this reason a surety in that state cannot, as in other states, compel the creditor to sue the principal. He is, therefore, without remedy, unless he can protect himself in this mode. In some other states *King* v. *Baldwin* has been followed. In some the rights and remedies of sureties are regulated by statute; and in others the doctrine of *King* v. *Baldwin* has been entirely repudiated. *Bull* v. *Allen*, 19 Conn. 106; 2 Am. Leading Cases and cases cited, 270; 1 Parsons on Notes and Bills, 236, and notes and cases cited. When a party contracts jointly with another, as in this case, as between himself and the creditor he is a principal debtor—he expressly undertakes to pay the debt. It is his duty, both morally and legally, to pay it; and we are of the opinion that the weight both of authority and reason is decidedly in favor of the proposition that the failure of the creditor to sue, when requested so to do by the surety, does not operate to discharge the surety from his liability. This was evidently the opinion of the supreme court of this state. *Hart-*

*man* v. *Burlingame*, 9 Cal. 561, and *Humphreys* v. *Crane*, 5 Cal. 175."

In *Harris* v. *Newell*, 42 Wis. 690, Ryan, C. J., said: "The contract of a surety is not merely a contract to perform upon the failure of the principal, but binds the surety equally with the principal. The surety assumes for himself the liability of the principal. And, as Lord Eldon remarks in *Wright* v. *Simpson*, 6 Vesey, Jr. 714, as between the creditor and the surety the creditor as sumes no obligation of active diligence against his principal; and it is the business of the surety, not of the creditor, to see that the principal performs." "This is the legal contract; but because the surety has no interest in the contract of his principal, and because the creditor of the principal debtor may prejudice the surety by delay, equity will sometimes interfere in behalf of the surety, either against his principal or against his creditor. In such a case the surety may proceed in a court of equity against the principal to compel him to pay the debt, or against his creditor to compel him to proceed at law to collect his debt from the principal. 1 Story's Eq. sec. 327; *Wright* v. *Simpson, supra; Hayes* v. *Ward*, 4 Johns. Ch. 123; *Bishop* v. *Day*, 13 Vt. 81. This well established equitable jurisdiction appears to preclude the right claimed in this case for the surety — the right to notify the creditor to proceed, and, upon failure of the creditor to do so, to stand released at law. For, if the surety could thus of himself put the creditor in motion, it is difficult to see why he should resort to a court of equity to do for him what he could do for himself.

"This power to put the creditor in motion appears to be more safely reposed in the discretion of a court of equity than vested as a legal right, at his option, in the surety. The diligence of creditors is generally to be trusted; and when they forbear it is generally from prudential motives, having regard to all the interests con-

·cerned. The legal right of a surety to interfere against
·such forbearance might well be mischievous and oppress-
·ive. It is true that the creditor and principal debtor may
·collude to the prejudice of the surety. That would be a
proper ground for equitable interference. But it is safer,
in any case, to leave the surety to the equitable remedy,
to be exercised in view of all the circumstances, than to
make him his own chancellor to control the action of his
creditor."

After referring to the decisions in New York and Penn-
sylvania to the contrary, he continues: "But we believe
that the doctrine of *Paine* v. *Packard*, as a rule of judi-
cial construction, is confined to those two states. There
is a full and learned note to *Paine* v. *Packard* and *King*
v. *Baldwin*, in the court of errors, by the learned authors
of Am. Lead. Cases, by which it appears that the doctrine
of those cases does not prevail in England, in the federal
courts, or in the courts of any other state in which it
has not been adopted by statute. The learned counsel of
the respondent cited cases against the doctrine from
Maine, New Hampshire, Vermont, Massachusetts, Illi-
nois, South Carolina and the federal courts. A review of
these cases would fully sustain our view. And the
learned counsel for the appellants cited in support of his
position only cases in New York, Pennsylvania and in
Alabama, Arkansas and Tennessee, which go upon stat-
utes, approving of the rule of *Paine* v. *Packard*. But
these cannot avail for the unsound doctrine against the
strong and universal current of authority outside of the
infected states. Indeed, the adoption in those states of
such statutes may be regarded as a strong concession
against the rule, independent of them."

The authorities are decidedly in favor of the proposi-
tion, in absence of any statutory provision controlling it,
that if, after the debt is due, the surety request the cred-
itor to sue the principal, who is then solvent, and the
·creditor fails to do so, and the principal afterwards be-

comes insolvent, the surety is not thereby discharged. And if there were no authorities on the subject, considering the nature of the obligation of a surety, we do not well see how the contrary could be maintained. The contract of the surety to pay is as absolute as that of the principal, and he cannot change his absolute promise into a conditional one to pay, providing the creditor cannot collect from the principal.

The averment in the answer, that the plaintiff theretofore agreed to and did release the defendant from all liability on the note, is the averment of a legal conclusion; and the further averment that the plaintiff then and there told the defendant to rest easy, that he would not look to him for the payment of the note, but that the principal was good enough for him, and that he would trust him for the payment thereof, is a promise without a consideration, and would not have prevented the plaintiff, the payee, from at once commencing an action against the surety to collect the note.

The averment in the answer that the plaintiff, without the consent of the defendant, the surety, gave the principal debtor further time in which to pay the note, is deficient in two particulars at least. The time of payment does not seem to have been extended from any definite period, or for any consideration.

The answer did not state a defense to plaintiff's action, and the motion for a judgment in favor of plaintiff, notwithstanding the answer, was therefore properly granted.

The judgment is affirmed, with costs.

*Judgment affirmed.*