FARMERS & MECHANICS' BANK *v.* F. B. HATHAWAY.

*Promissory Note. Principal and Surety. Deposition. Evidence.*

The defendant signed the note in question as surety upon an agreement that the maker should apply $125. of the money to be raised on the note in payment of a debt he owed the defendant. The note was not negotiable, but designed for procuring a loan of money of the payee. The payee refused to discount the note, and the maker then let A. have it under an arrangement that he should endorse it and get it discounted, and apply the money obtained upon it upon a debt that the maker owed A. When the note became due it was protested as against A. and was paid by him. A. took the note in good faith, being ignorant of the agreement under which the defendant signed it. *Held*, that A. could not maintain an action on the note in the name of the payee against the defendant.

A deposition of a party about to leave the State, taken by a commissioner under an order of the court, is not admissible, it not having been taken in the mode prescribed by the statute.

Evidence of witnesses may be given in two ways only, by producing the witness upon the stand, and in the cases provided for by statute, by deposition taken in the *manner* prescribed by the statute.

ASSUMPSIT upon the following promissory note :

$150.   For value received we promise to pay the Farmers & Mechanics' Bank one hundred and fifty dollars, ninety days from date, with use.                         ISAAC C. OSGOOD,

F. B. HATHAWAY.

Burlington, August 1st, 1860.

Plea, general issue and special notice.   Trial by jury, April Term, 1863, PIERPOINT, J., presiding.   The plaintiff gave in evidence the note declared on.   The defendant gave evidence tending to show that one Osgood, the first signer of the note, was indebted to him in the sum of $125., and procured him to sign this note upon an agreement that Osgood should get it discounted and bring back to the defendant $125. of the proceeds, to apply on that indebtedness, retaining the balance for his own use, and that the defendant was in all respects, a surety on the note ; that Osgood offered the note at the Bank for discount, which was declined ; that he thereupon met one Adams to whom he was also indebted in the sum of $150., and after some conversation told him that he had been to the bank to get the money on the note to

carry to the defendant, but had not succeeded ; that Adams there-upon proposed to take the note, indorse it himself and get it dis-counted and apply the proceeds on the debt due him from Osgood ; that Osgood assented to this, and Adams took the note and wrote his name on the back, got it discounted at the plaintiff's bank, and applied the proceeds on his debt against Osgood as agreed ; that Osgood on his return informed the defendant that the note was at the bank and had not been discounted, and the defendant did not learn that it had been passed to Adams till sometime afterwards.

It further appeared by the evidence of Adams that when the note fell due, the plaintiffs protested the note and called on Adams for payment and he paid the note and took it up, and subsequently brought this suit for his own benefit in the plaintiff's name, they assenting to the use of their name.

It was not claimed that the plaintiff had at any time any notice of the agreement between Osgood and Hathaway ; and he testified that when he took the note Osgood told him he had tried to get the money on it in order to pay a note of Osgood's that was past due, on which Adams was indorser.

A further question was made in the case relative to an alleged payment, in regard to which no question arises except as to the admissibility of the written evidence of one Hodgkinson, offered on the part of the plaintiff, and material to the issue on that part of the case.   The evidence was taken under the following order of the court entered on the docket :

"On motion of the plaintiff and notice to the defendant's counsel, ordered that J. S. Adams be commissioner to take the testimony of Thos. Hodgkinson, *de bene esse*, to be used in said cause for the plaintiff, to be taken on reasonable notice to H. B. Smith, Esq., defendant's counsel."   It appeared in Hodg-kinson's deposition that he had enlisted in the army and was about to leave for the war.

The defendant objected to the admission of the evidence on the ground that it was not legally taken.   The court overruled the objection and admitted the evidence,—to which decision the defendant excepted.

The defendant requested the court to charge the jury, among other things, that if they found the facts to be as the plaintiff's evidence tended to show, this action could not be maintained in the name of the present plaintiff.

The court declined so to charge, but charged the reverse.

To the refusal of the court to charge as requested, and to the charge as given on the points of the requests, the defendant excepted.

*H. B. Smith* and *E. J. Phelps*, for the defendant.    1. This case must stand, as to its merits, upon the relative rights of Adams and the defendant.    It is a rule without exception, that where a note is sued in the name of one without interest, for the sole benefit of another, the recovery so far as the merits are concerned, depends entirely on the rights of the real plaintiff, and the suit will stand as if brought in his name.

2. The transfer of the note by Osgood to Adams was a fraud upon the defendant.

3. The note not being negotiable on its face, and having been fraudulently applied by Osgood to a different purpose from that for which it was entrusted to him, Adams acquired by the transaction no right of recovery against the defendant.    *Keith* v. *Goodwin*, 31 Vt. 274; *Bank of Middlebury* v. *Bingham*, 33 Vt. 633; *Bank of Montpelier* v. *Joyner*, *ib.* 481.    In the present case, so far from the purpose of the note being answered as intended by the surety, the application of it is a gross fraud upon him, and (if binding), a loss to him equal to its amount.    *Pidcock* v. *Bishop*, 10 E. C. L. 197; *Kasson* v. *Smith*, 8 Wend. 437; *Bank of St. A.* v. *Smith*, 30 Vt. 148.

4. The circumstances attending the transfer of the note to Adams were such as to excite suspicion, and should have put him on enquiry.    And if he made no inquiry, he can not stand as a *bona fide* holder, nor recover in this action.    This point should have been submitted to the jury upon the evidence. *Roth & Co.* v. *Colvin*, *Allen & Co.*, 32 Vt. 132; *Brown* v. *Tabor*, 5 Wend. 566; *Snow* v. *Peacock*, 3 Bing. 406; *Gill* v. *Cubitt*, 3 B. & C. 466; *Strange* v. *Wigney*, 19 E. C. L. 201; *Easley* v. *Crockford*, 25 E. C. L. 116.

5. But if Adams were entitled to recover on the merits, no action can be maintained on the note in the name of the plaintiffs, because they have been paid in full by one of the parties to it. The *prima facie* effect of his signature is to make him a joint signer. *Strong* v. *Riker*, 16 Vt. 557 ; *Sylvester* v. *Downer*, 20 Vt. 859 ; and this is not rebutted by proof. Even if Adams were in fact and strictly an endorser, it would not affect this question. A note paid to the holder by an endorser, can no more be sued again by the same holder, than if paid by a signer.

6. If the defendant were liable to Adams, and in this action, no recovery could be had beyond one-half of the note. That the defendant was but a surety, is conceded. When Adams put his name on the note to procure the discount, he became surety also. Contribution among sureties for the same debt is universal, unless an express agreement to the contrary is shown. *Flint* v. *Day*, 9 Vt. 345 ; *Keith* v. *Goodwin*, 31 Vt. 274 ; *Pitkin* v. *Flanagan*, 23 Vt. 160 ; *Craythorne* v. *Swinburne*, 14 Vesey 166.

7. Hodgkinson's testimony was inadmissable. (a) There was no statute authorizing the taking of the testimony in that way. (b) There never was any such practice or rule of court. (c) The common law practice on this subject has never been adopted in this State. And the statute relative to depositions excludes it, by providing a different and complete system, applicable to all cases. (d) The proceeding in this instance, was not even conformable to the common law practice. 1 Phil. Ev. p. 14.

*George F. Edmunds*, for the plaintiffs.

There can be no question as to the right of the Bank to maintain this suit, unless the fact that Adams, upon the note being protested, paid it and then with the assent of the Bank brought this suit for his benefit, constitutes a defence. It has become settled law in this state, that want of interest in the plaintiff is no defence to an action on a note, and that any party who is entitled to receive the sum of money mentioned in it, may sue it in any name he pleases. *Austin* v. *Bingham*, 31 Vt. 580.

As to the merits of the case, there is nothing in it to distinguish it from the following cases : *Bank* v. *Beach*, 1 Aik. 62 ; *P. Bank* v. *Goss*, 31 Vt. 316 ; *Dixon* v. *Dixon*, *ib.* 450 ; *Bank* v.

*Joyner*, 33 Vt. 481 ; *Bank* v. *Bingham*, *ib.* 621 ; *Keith* v. *Good-win*, 31 Vt. 274.

As to the objection to the testimony of Hodginson by the course of the common law, the witness being about to depart from the state, it was lawful to take his testimony under a rule of the court, provided the consent of the defendant could be compelled or dispensed with. 13 M. and W. 676. This in this country has always been done,—the useless circumlocution of going into chancery or managing to induce a consent has been wisely abandoned. 2 Phil. Ev. 38 ; 1 John. Cases, 147 ; *Mum-ford* v. *Church*, 7 Cow, 59, 63 ; *Green* v. *Kent, ib.* 69, *ib.* 489 ; *Farnsworth* v. *Pierce*, 7 Vt. 83.

And the defendant, not appearing to have objected and having united in the examination under the commission, has waived any objection founded on want of consent. 3 Wis. 274.

BARRETT, J. The defendant signed the note in question as surety of Osgood, the principal, payable to the plaintiff Bank, and not negotiable—in the common form of a note designed for discount in ordinary course of obtaining a loan from the Bank. He did it under an agreement with Osgood, that he, Osgood, was to get the money on it, and pay over $125. to the defendant on a debt which Osgood was owing him, and retain the balance.

Osgood went to the Bank with the note, but the Bank declined to discount it. Whereupon, on leaving the Bank, he met Adams, and then informed him of his having the note, and his inability to get it discounted, saying to him that his purpose was to get the money on the note, and apply it to the payment of a note in the Bank of Burlington, on which Adams was surety for Osgood. Thereupon, after Adams had ascertained that the Bank would discount the note if he would endorse it, Osgood let Adams have the note, under an arrangement that Adams was to apply the money obtained upon it, upon a debt that Osgood was owing him ; and Adams endorsed the note, and got it discounted, and received the money upon it of the Bank, and applied it on his debt against Osgood. When it became due, it was protested as against him, and he paid it, and took it up, and then brought this suit in the name of the Bank to collect the

amount of it of the defendant. Adams was not informed, and did not know of the agreement between Osgood and the defendant, under which the defendant signed and permitted Osgood to take the note, but took the note in good faith.

On these facts the defendant claims that this suit cannot be maintained against him.

In *Pass. Bank* v. *Goss*, 31 Vt. 316, and *Dixon* v. *Dixon, ib.* 450, the notes were each received of the principal maker by the party named as payee, upon adequate consideration, and in pursuance of the purpose, in fact, designed in the making of said notes, as well as imported by their face. In these cases it was held that any understanding or agreement between the makers, as to the procurement of other signers as sureties, before the notes were to be delivered, of which the payee had no notice or knowledge, could not effect the right of the payee, receiving and holding them in good faith to enforce the notes according to their tenor and effect.

In the case of the *Bank of Burlington* v. *Beach*, 1 Aik. 62, and in the cases succeeding in the same line, down to the *Bank of Middlebury* v. *Bingham*, 33 Vt. 621, and the *Bank of Newbury* v. *Webster* not yet published, the parties who had received them (though not the payees named in the notes,) in such manner as to accomplish the purposes for which the notes were made, and without prejudice to the sureties thereon, were held entitled to maintain suits on said notes in the name of the payees with their assent, and enforce the collection of the makers.

If this suit is to be maintained, it must be because it falls within the principle of the one or the other of said two classes of decisions.

The note not being payable to Adams, distinguishes this case case from the case of *Pass. Bank* v. *Goss*, and of *Dixon* v. *Dixon.* Though it was a perfected instrument, it did not import that it was primarily designed to be delivered to him, and thus carry with it the apparent right to receive it, irrespective of any unknown agreement between the makers.

The inference from the note itself is, that it was designed by the makers for procuring a loan of the Bank by an ordinary discount. It is not necessary to say whether, if Adams had re-

ceived the note upon an advance of its amount to Osgood, in the same way the Bank would have done if it had discounted it, he would have had the same immunity against the agreement under which the defendant signed and entrusted the note with Osgood as the Bank would have had if it had discounted and received it.

What seems to us to distinguish this case from the second class of cases before named is, that Adams, in fact advanced nothing upon the note. He did not take it in due course of negotiation from a holder of the note, but from the principal maker. He took it in fact as, and in place of, the payee. And he took and appropriated it for a purpose different from that imported by the face of the note itself. The transaction amounted simply to this: Adams, finding Osgood with this note, designed for procuring a loan of money, proposed to take it and apply it on a debt which he then had against Osgood, and it was so done.

It seems very clear that such a transaction is very different from any of those in the cases before referred to, and lacks entirely the indispensable elements upon which the right to maintain the suit in those cases depended, and was put in the decisions.

It is impossible for us to see upon what principle, either of law or equity, Adams can be held to have immunity by virtue of receiving that note in that manner, against the real transaction and agreement between the defendant and Osgood in and in pursuance of which the defendant signed the note as surety.

Certainly no principle of commercial or mercantile law can be invoked for such a purpose, for the transaction did not place Adams in the character and position, under that law, which would protect him against equitable defences by the surety. He was not payee, nor endorser, nor was he holder for a consideration advanced in good faith at the time he took the note, nor, in our apprehension, should he be regarded as holder unaffected with notice,—for, as before said, the note imported that it was designed to be used for obtaining a loan of money. When, therefore, he took it of the principal maker to apply on an old debt, we think he should be regarded as assuming the peril of the perversion of the note from the purpose of it, as shown by the instrument itself.

There is no ground for asserting any equity in his favor, for

he made no advance on the note. To be sure he put his name on the back of it and got the money on it of the bank. When it fell due he took it up by returning the money ; and he now holds it in just the same character, and with just the same rights, and nothing more, than if he had put the note in his pocket when he received it of Osgood and had kept it there without passing it into the hands of the bank.

That this is so, is implied in the bringing of this suit ; for in no other view can the suit be maintained in the name of the bank. If he is not to be regarded as the holder and endorser of the note, but merely a surety upon it by reason of his putting his name on the back of it, then of course, his payment of it to the bank would satisfy any right of action in the name of the bank, either in its own behalf or for the benefit of any body else ; and the only mode by which Adams, as surety, could enforce any right against the defendant as co-surety would be by action for money paid in his own name, to compel a rateable contribution. Now we hardly think it would be seriously claimed, if Adams had kept the note without having endorsed and got it discounted at the bank, that merely by the fact of having received it in the manner he did, to apply on his debt against Osgood, that any equity accrued in his favor against the defendant as Osgood's surety. But when, in addition, the fact is considered that Osgood was owing the defendant and the defendant signed as surety for the purpose and under the agreement with Osgood, that money was to be raised on the note, of which defendant was to have $125 to apply on his debt against Osgood, the preponderating counter equity in favor of the defendant is very apparent and could not be made plainer by further remarks.

Indeed we think the case falls within the principle of *Pidcock* v. *Bishop*, 10 E. C. L. 194, which has been referred to and considered with approbation in the various cases that have come before this court involving this subject, and stand in close analogy for the application of principles with the *Bank of St. Albans* v. *Smith*, 30 Vt. 148.

As to the deposition of Hodgkinson. It was not taken in the mode prescribed by the statute. Evidence of witnesses may be given in two ways, by producing the witness upon the stand, and

in the cases provided by statute, by deposition taken in the manner prescribed by the statute. We know of no other modes in cases falling within the provisions of the statute, by virtue of any law in force in this State.

If the parties agree to testimony being given in some other mode, that stands upon the agreement and not upon the law providing a mode. In this case the evidence was taken under and by force of the order named in the exceptions, and its admissibility was put entirely on the ground that this mode of taking it was a legal mode,—not on the ground that it was taken by the consent of the parties.

The plaintiff put himself on the ground that in virtue of this mode of taking it being lawful, he had the legal right to use it, and it was on this ground that it was admitted.

We think there is no warrant of law for taking depositions in this way in this case.

The judgment is reversed and the case remanded.