EZRA DANE *v.* F. CORDUAN, ADMINISTRATOR OF THE ESTATE OF V. DEHAMEAU.

| 24 | 157 |
| 77 | 477 |
| 24 | 157 |
| 87 | 618 |

DISCHARGE OF SURETY ON NOTE. — Where a promissory note is executed jointly by two persons, and one of them is surety for the other, and at a time when the principal on the note is solvent the surety makes demand on the creditor to pro-

Ezra Dane *v.* F. Corduan.

ceed at once and collect the debt from the principal, and the creditor fails to sue the principal, who afterwards becomes insolvent, the surety is not thereby released from his liability on the note.

DECREE OF COURT FOR PAYEE TO SUE SURETY—COMPLIANCE WITH. — A. and B. executed a joint promissory note to C.; B. was surety for A. B. brought an action against C., after the maturity of the note, to compel him at once to proceed and collect the amount due on the note from A., the principal, and obtained a decree requiring C. to commence legal proceedings against A. for the collection of the note, upon B.'s tendering to him a sufficient amount to pay reasonable costs and expenses, or be forever debarred from collecting the same from B. B. deposited with the Clerk and Sheriff a sufficient amount to pay their costs, and tendered to C. the services of an attorney employed by B. C. refused to commence the action, and A. subsequently became insolvent. *Held*, that this was not a compliance with the conditions of the decree by B., the surety, and that he was not released from his liability on the note.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The facts are stated in the opinion of the Court.

*H. P. Barber*, for Appellant.

The decree was never fulfilled by the defendant, the party invoking its provisions; consequently he could not plead it in bar.

The decree compelled plaintiff to sue on defendant tendering *to him* a sufficient sum to pay reasonable *costs* and *expenses.*

A party obtaining a decree cannot substitute *his* ideas of equity for the plain *language* of the decree; if he does so, he does it at his peril. (*Hoffman* v. *Treadwell*, 5 Paige, 82; *Sparhawk* v. *Buel*, 9 Vermont, 41.)

The decree ordered him to tender to *plaintiff* a certain amount for *costs* and *expenses*. The tender must be made to the party *himself.* (*Hargous* v. *Lahens*, 3 Sandf. 213.)

"Costs" mean the fees, etc., allowed by law. "Expenses" have a broader signification, and involve what it would reasonably cost a party to conduct such suit, including a reasonable fee for his lawyer.

All the cases show that a Court of equity will compel the surety *fully to indemnify* the creditor against expense in any suit he may be decreed to bring against the principal debtor.

(2 Johns. Chy. Rep. 554; 17 Johns. 384; 1 Story's Eq. Jur. §327; 2 Am. Lead. Cas. 317, *et. seq.*)

A case in point is to be found in *Dubois* v. *Dubois*, 6 Cowen, 494.

It was there held that payment into Court was *not* a payment to the party to whom the decree ordered the money to be paid.

Neither can the surety avoid the necessity of paying the reasonable "expense" of an attorney by endeavoring to foist *his* attorney on the creditor. (*Peck* v. *Acker*, 20 Wen. 605.)

*Quint* and *Redmond*, for Respondent.

I.   The effect of a neglect or refusal on the part of the payee to proceed and collect from the principal, when requested by the surety so to do, cannot be said to have been, as yet, formally decided by this Court.

We believe that upon an examination of the authorities upon this point it will be found that we are correct in saying that it is a well settled doctrine, maintained by the Courts of the principal States of the Union, that : " If the surety can positively and clearly show injury to himself, by the failure of the creditor to prosecute, after request, he is exonerated *pro tanto.*" (*Paine* v. *Packard*, 13 Johns. 174; *King* v. *Baldwin*, 17 Johns. 384; *Bruce* v. *Edwards*, 1 Stew. 11 ; *Manch. Iron Co.* v. *Sweeting*, 18 Wend. 162; *Goodman* v. *Griffin*, 3 Stew. 160; *Johnston* v. *Thompson*, 4 Watts, 446 ; *Geddes* v. *Hauk*, 10 S. & R. 33 ; *Lectenhaler* v. *Thompson*, 13 S. & R. 157 ; *Aliter Peckett* v. *Land*, 2 Baily, 368 ; *Hogaboom* v. *Herrick*, 4 Verm. 131 ; *Dehuff* v. *Turbett*, 3 Yeates, 157 ; *Vallentine* v. *Farrington*, 2 Edw. Ch. 53 ; *Rutledge* v. *Greenwood*, 2 Dessau; *Washburne* v. *Holmes*, Wright, 167 ; *Bailey* v. *New*, 29 Geo. 214; *Hubbard* v. *Davis*, 1 Aiken, 296 ; *Montpelier Bank* v. *Dixon*, 4 Verm. 587 ; *Paige* v. *Webster*, 15 Maine, 249 ; *Washburn* v. *Pierson*, 8 N. Ham. 539 ; *Pintard* v. *Davis*, 1 Spencer, 205 ; *Ball* v. *Allen*, 19 Conn. 101 ; *Boughton* v. *Duval*, 3 Call, 61 ; *Jenkins* v. *Clark*, 7 Hammond, 72 ; *Row* v. *Tulver*, 1 Cow.

246 ; *State* v. *Reynolds,* 3 Mo. 95 ; *Miller* v. *Berkley,* 7 Pa. St. 317 ; 18 Pa. St. 460 ; 3 Stob. Eq. 59 ; 5 Pick. 307 ; *Warner* v. *Beardsley,* 8 Wend. 194.)

" The surety will not be discharged unless the failure to comply with his request has resulted in actual injury, which must be shown by proving that the principal was solvent when it was made, and has become insolvent subsequently." (*Huffman* v. *Hurburt,* 13 Wend. 377 ; *Herrick* v. *Burt,* 4 Hill. 650 ; *Gardener* v. *Ferree,* 15 S. & R. 28 ; *Merrett* v. *Lincoln,* 21 Barb. 249 ; *Thompson* v. *Watson,* 10 Yerg. 362.)

In Ohio the surety is discharged, if the notice to proceed against the principal is in writing.

In Massachusetts the request must be accompanied with an indemnity against costs and charges.

The main objection to the maintenance of this doctrine, viz: that the surety has always the right and power to pay the debt himself, and then proceed against the debtor—has been so fully considered in some of the cases which we cite that we do not think it necessary to more than allude to it.

It cannot be urged that we are in any way endeavoring to lessen the obligation of the contract between the payee and the surety. In seeking to maintain this doctrine we only ask that the payee be held to respect those equities which are inseparable from the contract of suretyship. The surety's obligation is certainly only collateral, and the maintenance of the doctrine in question would necessarily result from the recognition of this position.

In concluding our argument on this point we cite the authority of the leading American text book on the subject.

Professor Parsons, on the Law of Contracts, Vol. 1, Book III, p. 50, says :

" From a consideration of the cases and the reasons on which they rest, we think this rule may be drawn : That a surety is discharged when the creditor, after notice and request, has been guilty of a delay which amounts to gross negligence, and by this negligence the surety has lost his security or indemnity."

Mr. Justice Story, speaking of the equities between the creditor and surety, says (Story Eq. Jur. Vol. 1, §325) :

" If he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases, the latter will be discharged; he may set up such conduct as a defense to any suit brought against him, if not at law, at all events in equity."

II. It is a well settled doctrine that the surety can proceed in equity to compel the grantee to take immediate steps to collect the debt from the principal.

This was done in the case at bar, and the only question is, whether there have been any laches on the part of the administrator defendant which will preclude him from pleading this decree as a bar to any recovery in the premises against the estate of V. Dehameau, deceased ?

Of what laches have we been guilty, that we should be deprived of the protection granted to us by the decree of the Court in the case of *Corduan, Administrator,* v. *Dane ?*

The Court required us to tender to Dane, in that case, an amount sufficient to pay reasonable costs and expenses to which he would be put in proceeding against the principal, Volpillac.

It was in evidence, uncontradicted, that we paid into the hands of the proper officers, for Dane, the costs which would be incurred in the suit ordered to be taken by him against Volpillac, and also tendered him the services of a lawyer to conduct the case. What more could be required from us ?

But, the learned counsel for the appellant will perhaps say : You should have tendered us a reasonable amount with which to pay a lawyer of our own selection; that was clearly the intention of the decree; you did not, perhaps, offer us a competent lawyer, or we choose to have one of our own choice in whom we could place confidence.

This, we conceive, is as insufficient a reason as was ever advanced in a Court of equity to deprive a suitor of the bene fit of relief which had been granted to him.

21

Who was the most interested in the success of the suit ordered by the decree of the Court to be commenced against Volpillac? Or, indeed, we might ask, was there any one interested in the gaining of that suit except the administrator, Corduan? If Dane lost, did he *lose* anything? Not a dollar. We had given bonds to secure our paying over all assets of the estate which came into our hands to those who were entitled thereto. It would have been *damnum absque injuria*.

It has been repeatedly affirmed that the party most interested in the result of a suit is entitled to the control in the selection of counsel, and, indeed, there would be but little equity in maintaining a contrary doctrine.

By the Court, SAWYER, J.

The note sued on was executed in favor of the plaintiff by Dehameau as surety for Volpillac, the joint maker. After the maturity of the note, the defendant Corduan, as administrator of Dehameau, deceased, filed his bill against the plaintiff, Dane, setting up the circumstances under which Dehameau executed the note, asking a decree requiring the plaintiff, Dane, to proceed at once against the principal, Volpillac, and collect the amount due. It was accordingly decreed in this suit: "That said defendant make an immediate demand on E. Volpillac for the payment of the note executed," etc.; "that on said E. Volpillac's refusal, defendant commenced legal proceedings against said Volpillac for the payment of said note and interest, * * * within ten days from the filing of this decree, or be forever debarred from claiming the same from the estate of said C. Dehameau, plaintiff, * * * on the plaintiff tendering to said defendant a sufficient amount to pay reasonable costs and expenses in the suit against E. Volpillac for the payment of the note aforesaid."

The defendant "deposited with the Clerk and Sheriff a sufficient amount to pay their legal fees in the proposed suit of *Dane* v. *Volpillac.*" The defendant, by his attorney, wrote a letter to plaintiff, in which he says: "Please take notice that

the Clerk's and Sheriff's fees are paid, and sufficient money is in their hands to pay all the costs in the suit of *E. Dane* v. *Volpillac*, ordered to be commenced, * * * and you are hereby tendered the services of an attorney to conduct the case." To which Dane, by his attorney, on the same day, replied: "When the order made in the case of *J. Corduan, Administrator*, v. *E. Dane*, is complied with on your part, I shall in all things comply. In the conduct of any legal business which I may have, I exercise my privilege of selecting my own attorney." And he further emphatically declined the services of the attorney proffered.

"Volpillac was in the possession of and exercising rights of ownership over property of the value of from five thousand to seven thousand dollars in a store in the City of Sonora, Tuolumne County, for a period of about two months subsequent to the making of the decree aforesaid, and said property was subject to levy and attachment."

No further proceedings having been taken by either party under the decree, this suit was brought to recover the balance due on the note. The foregoing facts, among others, were set up in the answer, and having been established by evidence on the trial, the Court dismissed the suit with costs, from which judgment of dismissal the plaintiff appeals, "on the ground that the decision is contrary to law and the evidence in the case, and that the defendant, not having complied with the terms of his decree, was not entitled to invoke its aid as a bar or estoppel."

On this state of facts two questions are raised in the argument of counsel. The respondent insists:

First—That the first suit and decree may be regarded as a formal demand made by the surety upon the creditor to proceed at once and collect the debt from the principal; and the creditor, having failed to proceed against the principal upon such request, at a time when he was solvent, the surety, by such failure, has been injured, and is exonerated.

Second—That he has substantially complied with the terms of the decree on his part, while the plaintiff has failed to

prosecute, as required by the decree, and he is thereby barred from recovering against the surety.

As to the first question, admitting that a request and failure to prosecute has been shown, is the security exonerated from liability? Such a state of facts did not discharge the surety in England. His remedy was to pay the debt himself, and then sue the principal; or, perhaps, he might, by bill in chancery, compel the creditor to proceed against the principal. Chancellor Kent says: "There is no case in the English law in which the personal application of the surety to the creditor was held to be compulsory on the creditor, at the hazard of discharging the surety." (2 John. Ch. Rep. 562.)

There was a departure from the English rule on this subject in *Paine* v. *Packard*, 13 John. 174, and in that case the surety was held to be discharged. But this case was combated and overruled by Chancellor Kent in *King* v. *Baldwin*, 2 John. Ch. Rep. 654. The case was appealed, and in the Court of Errors reversed by the casting vote of the Lieutenant-Governor, who, like many Senators voting on the question, was a layman. This fact detracts very much from the weight of the decision as authority, and the arguments of Chancellor Kent in the Court of Chancery, and of Senator Van Vetchin in the Court of Errors, against the principle announced in the case, appear to us to be conclusive. The Courts of New York have since followed the case of *King* v. *Baldwin*, while they have disapproved of the principle established by it. Mr. Justice Cowen, in commenting on this case in *Herrick* v. *Boest*, 4 Hill, 656, says: "What principle such a defense should ever have found to stand upon in any Court it is difficult to see. It introduces a new term into the creditor's contract. It came into this Court without precedent, was afterward repudiated even by a Court of Chancery, as it always has been both at law and in equity in England, but was restored on a tie in the Court of Errors, turned by the casting vote of a layman. Platt, J., and Yates, J., took that occasion to acknowledge they had erred in *Paine* v. *Packard*, as Senator Van Vetchin showed most conclusively that the whole Court had done." Yet he

followed the case, on the ground "that the error had become inveterate."

The Courts of Pennsylvania have also followed *King* v. *Baldwin*, but they assign as a reason for so doing that in Pennsylvania there is no Court of Chancery, and the common law Courts exercise chancery powers to a very limited extent —that for this reason a surety in that State cannot, as in other States, compel the creditor to sue the principal. He is, therefore, without remedy, unless he can protect himself in this mode. In some other States, *King* v. *Baldwin* has also been followed. In some, the rights and remedies of sureties are regulated by statute; and in others, the doctrine of *King* v. *Baldwin* has been entirely repudiated. (*Bull* v. *Allen*, 19 Conn. 106; 2 Am. Lead. Caus. 270, and cases cited; 1 Parsons on Notes and Bills, 236, and notes and cases cited.)

When a party contracts jointly with another, as in this case, as between himself and the creditor, he is a principal debtor— he expressly undertakes to pay the debt. It is his duty, both morally and legally, to pay it; and we are of the opinion that the weight, both of authority and reason, is decidedly in favor of the proposition that the failure of the creditor to sue when requested so to do by the surety, does not operate to discharge the surety from his liability. This was evidently the opinion of the late Supreme Court of this State. (*Hartman* v. *Burlingame*, 9 Cal. 561, and *Humphrey* v. *Crow*, 5 Cal. 175.) And there is less necessity for following a contrary doctrine in this State, for the reason that the Practice Act furnishes to the surety a more ample remedy than he formerly had, even in Courts of equity, for he can himself bring a suit against the creditor and principal debtor, and compel the latter to pay the debt. (Practice Act, 527.) The action contemplated by this section was, doubtless, intended as a substitute for the proceeding in chancery to compel the creditor to sue, and it may be doubted whether any other action by the surety against the creditor is allowed in our State.

As to the second point, admitting the decree to be sufficiently specific in its provisions to be valid, of which there

is much room for doubt, we do not think the defendant complied with its terms. To render the decree available as a bar, it was necessary for him to perform specifically the conditions imposed by it; and the condition was, that he should tender " to said defendant (plaintiff in this suit) a sufficient amount to pay reasonable costs and expenses in the suit against E. Volpillac," etc. He is not at liberty to do something else, which he may deem to be equivalent to making a tender to the defendant in the decree; he must do the specific thing required by it. Paying to the Clerk and Sheriff a sufficient amount to pay *their* fees in the contemplated suit, is not the same thing as tendering it to Dane. (*Dubois* v. *Dubois*, 6 Cow. 494.) Or, if so, it is certainly not the same thing as tendering to Dane " a sufficient amount to pay reasonable costs and expenses in the suit," etc. There are other costs than Clerk's and Sheriff's fees, (even admitting payment to them of their fees to be a good tender under the decree, which we are not prepared to do,) such as witness and jury or referee fees, to say nothing of the expense of procuring an attorney; and the tender of the services of an attorney is not equivalent to furnishing money to pay the expense of procuring one. The plaintiff was entitled to select his own attorney. (*Peck* v. *Acker*, 20 Wend. 605.) If the defendant desired to select his own attorney, or superintend the disbursements of the costs and expenses of the suit, he could have done so by bringing his suit under section 527 of the Practice Act, and making the principal as well as the creditor a party. In that mode, also, he could just as well have accomplished his whole object by a single action, instead of subjecting himself and the creditor to the trouble and expense of litigating a second suit. But he has chosen to pursue a different course, and he must rely for his discharge strictly upon the terms of his decree. Having failed to comply with those terms, the decree can afford him no protection.

Under the views we have taken of the case, the Court erred in dismissing the complaint and rendering judgment for the defendant.

There are other matters set up in the answer which may, perhaps, constitute a good defense ; but they do not appear, from the transcript, to have been proved. But no point is made on these matters, and we do not pass upon them.

Judgment reversed and the cause remanded for further proceedings.