[No. 1,613.]

PHILIP SICHEL v. MARIA MERCED WILLIAMS De CARRILLO, JOSE CARRILLO (her Husband), CORNELIA RAINS, ISAAC RAINS, ROBERT RAINS, JOHN SCOTT RAINS, and FANNIE B. RAINS, Minor Children of John Rains, Deceased, et als.

Effect of Statute of Limitations.—The expiration of the time fixed in the Statute of Limitations with reference to actions for money due on contracts, does not discharge the debt or extinguish the right, but only takes away the remedy.

Mortgage Given by one Person to Secure Another's Debt.—Where a promissory note is executed by one person, and a mortgage to secure the debt is given by another, and the payor of the note dies, and the holder thereof fails to present either the note or mortgage to his administrator for allowance within ten months after publication of notice to creditors, although the claim is barred as against the estate, yet the mortgage remains in full force as against the mortgagor and the mortgaged property, and may be foreclosed at any time before it is barred, as against the mortgagor, by the Statute of Limitations.

Idem.—The above rule remains the same when the note is made by the husband for his own debt, and the wife mortgages her separate property to secure it, and the husband signs the mortgage to show his assent to it. In such case the wife's liability on the mortgage is not affected by the death of the husband and the failure of the holder to present the claim for allowance to the administrator of his estate.

Contingent Claim against an Estate.—If the wife, to secure the debt of the husband, mortgages her separate property, and the husband dies, and the holder fails to present the claim to the administrator for allowance, and the mortgage is afterward enforced; whether the widow has a contingent claim which she may afterwards enforce against the estate, spoken of, but not decided.

Change of Conclusions of Law by Court.—Whether, after the Court has made its findings of fact and adopted its conclusions of law, it may change the conclusions of law, and enter a different judgment from that first ordered, spoken of, but not decided.

Cost of Transcript.—When an appellant includes in the transcript irrelevant matter, he cannot recover costs for procuring or printing the same.

COUNSEL FEES.—If there is no provision in a mortgage for payment of counsel fees, the plaintiff in an action to foreclose it is not entitled to such fees.

TAXES ON DEBT SECURED BY MORTGAGE.—If one person mortgages his property to secure the debt of another, and there is a provision in the mortgage for the payment of taxes on the mortgage debt, the plaintiff, in foreclosing, may retain such taxes out of the proceeds of sale.

LIMITATION OF ACTIONS AS AGAINST ESTATE OF DECEASED.—The limitation on the right to enforce a claim or debt, which is not presented to the administrator within ten months after the first publication of notice to creditors, applies solely to the claim as against the estate, and in no way affects the validity of the debt as against other persons who are liable for the debt, or whose property is liable.

APPEAL from the District Court of the Third Judicial District, County of Santa Clara.

John Rains died on the 17th day of November, 1862, and E. K. Dunlap was, on the 5th day of January, 1863, appointed the administrator of his estate. The administrator first published notice to the creditors of deceased on the 28th day of February, 1863. The notes fell due September 14th, 1863. This action was commenced on the 29th day of October, 1864. The Court below allowed the plaintiff one thousand dollars for counsel fees in foreclosing the mortgage. The administrator of Rains was not made a party to the action.

The other facts are stated in the opinion.

*G. F. & W. H. Sharp* and *A. Glassell*, for Appellants.

A presentation to the administrator of the estate of Rains was unnecessary. (*Christy* v. *Dana, ante,* 174.) Admitting that Mrs. Carrillo is a surety, and entitled to all the rights of one, appellant is not affected. He has not given time to the principal upon a binding agreement, received payment, or anything else. If a principal does not meet his obligation at the time and in the manner agreed upon, the liability of the surety becomes absolute. (Willard's Eq. Jurs. 108, and cases cited.) And if a demand on the principal in life is not necessary to bind the surety, his death, most certainly,

cannot impose on the creditor the burden of a demand (by presentation) on his representatives; if unnecessary in one case, it is in all. A release of property of the principal releases surety; but in this case it is the property of the alleged surety, and not the principal, that has been pledged. A discharge of the principal in insolvency does not affect the property pledged by surety and prevent the foreclosure of the mortgage. (*Christy* v. *Dana, supra.*) Appellant had two remedies; one on the personal obligation of Rains, and one on this separate property of his wife. By the general law of the State, at the time the contract is made the Statute of Limitations bar neither until four years after maturity.

*Holt & Heacock,* for Respondents.

An action on the notes or mortgage debt is barred by non-presentation to Rains' administrator. Upon this point there is no conflict in the authorities in this State. (*Ellison* v. *Halleck,* 6 Cal. 386; *Faulkner* v. *Folsom's Ex.,* 6 Cal. 412; *Fallon* v. *Butler,* 21 Cal. 24; *Willis* v. *Farley,* 24 Cal. 500; *Ellis* v. *Polhemus,* 27 Cal. 350.)

The debt being "forever barred," does an action lie to foreclose the mortgage? The solution of this question depends upon the nature and character of a mortgage in this State. What is a mortgage under our laws? It is a contract, in writing, whereby the debtor agrees that upon failure to pay a sum of money at a specified time the creditor may have his property sold, upon application to a competent Court, and out of the proceeds of the sale to have his debt paid. Beyond this he has no interest in the property mortgaged whatever. (*Godeffroy* v. *Caldwell,* 2 Cal. 492; *Peters* v. *Jamestown Bridge Co.,* 5 Cal. 336; *Ord* v. *McKee,* 5 Cal. 516; *Lord* v. *Mains,* 18 Cal. 488; *Willis* v. *Farley,* 24 Cal. 500; *Polhemus* v. *Trainer,* 30 Cal. 685.) When the debt goes out of existence, the mortgage goes with it.

As the surety for John Rains, Mrs. Carrillo is discharged from the payment of this money, independent of section one hundred and thirty of the Probate Act. The notes matured September 14th, 1863, and at that time, and ever since, the administrator of Rains has been acting as such, with full powers. Mrs. Carrillo, as surety, is entitled to all the rights and privileges of that relation; one of those rights is, that payment of the principal must be demanded before a suit lies against the surety. (*Riggs* v. *Waldo*, 2 Cal. 488; *Pierce* v. *Kennedy*, 5 Cal. 138; 1 Parsons on Notes and Bills, 354.)

*G. F. & W. H. Sharp*, in reply.

It is a well settled principle of law and equity, that no demand upon the principal is necessary to bind the surety; the latter's liability becomes absolute, if the former does not meet his obligation the day it is due. (*Orme* v. *Young*, Holt's N. P. Cas. 87; Willard's Eq. Jurs. 108.) If this be the rule while the principal is living, how can his death change the contract?

The sole object of section one hundred and thirty is to expedite the settlement of estates, and to protect a particular fund from old claims. There is no provision that an action should not be maintained upon the debt after ten months, as in the general Limitation Act. It would be a strange construction of this section to hold that if A. holds the joint note of B. and C., and B. should die, and A. proceeded directly against C., that he could not recover, because, not having pursued the estate of B., the note has lost its existence, consequently C. is discharged. The defense could not be, nor is it, maintainable.

*C. B. Younger*, also for Respondents Carrillo, Rains, and Hayes.

The bar created by section one hundred and thirty is available to the defendants, because that section is for the benefit

of the heirs and devisees, in order to discharge the estate within a reasonable time from the lien of the debts of the deceased. When an action on a promissory note is barred by the statute, the remedy upon the mortgage given to secure it is also barred; and in an action to foreclose the mortgage the bar of the note is a complete defense to the foreclosure, and is available to any one interested in the mortgaged property. (24 Cal. 497; 21 id. 495; 22 id. 100; 23 id. 16; id. 43; 24 id. 403; 26 id. 141; id. 361.)

*Peachy & Hubert* filed the petition for a rehearing on behalf of Mrs. Carrillo.

By the Court, SAWYER, C. J.:

On the 11th of November, 1862, John Rains executed the notes in suit, payable one year after date, for his own private debts. On the same day Rains and his wife, Maria Merced Rains, now Mrs. Carrillo, one of the defendants, to secure the payment of the promissory notes, executed the mortgage in question, upon lands which were the separate property of the wife, Mrs. Rains—the wife thereby mortgaging her own separate property to secure her husband's debts, for which neither she nor her property was otherwise liable. John Rains having died, an administrator was duly appointed, the statutory notice to creditors duly published, the ten months given to creditors to present their claims expired without any presentation of the notes or mortgage for allowance, and the claim thereby became barred, under section one hundred and thirty of the Probate Act, so far as the estate of Rains is concerned.

This action was subsequently commenced against Mrs. Carrillo, the real mortgagor, who was formerly the wife of Rains, and others having interests in the land, to foreclose

the mortgage. The Court found the facts substantially as thus briefly stated, ascertaining the amount due and unpaid, and, as a conclusion of law, added that plaintiffs were entitled to have the property sold under the judgment of the Court, and the amount found due paid out of the proceeds of the sale. Upon filing these findings, Mrs. Carrillo, the principal defendant, moved the Court to strike out the legal conclusion drawn from the facts, and substitute others of a contrary character, and the Court, upon consideration, adopted the views of defendant's counsel, and substituted conclusions to the effect that, by reason of the failure to present the notes and mortgage, or either of them, to the administrator of John Rains within ten months after publication of notice, the notes became forever barred before the commencement of suit, and that Mrs. Carrillo, being security to the extent of the property mortgaged for the payment of said notes, was thereby discharged from payment. In accordance with this view judgment was entered for defendants, from which plaintiff appealed.

The argument is that a mortgage is only an incident to the debt; that when the debt is paid, satisfied, or in any manner extinguished, the mortgage is also discharged or extinguished; that the mortgage cannot exist without a debt to support it, and that the debt, being barred by the statute on failure to present it to the administrator within the ten months prescribed, it is extinguished, and the mortgage thereby discharged for the want of a debt to support it. There is, at least, one mistake in this argument in assuming that the Statute of Limitations *extinguishes* the debt. It is well settled, with reference to actions for moneys due on contracts, that the statute does not discharge the debt, or in any way extinguish the right or destroy the obligation, but only takes away a remedy. The debt remains unsatisfied and unextinguished. It is a sufficient consideration to support a new promise. (*Townsend* v. *Jemison*, 9 How. U. S.

413; *Bulger* v. *Roche*, 11 Pick. 37; *Lincoln* v. *Battelle*, 6 Wend. 485; Ang. on Limit. 268, Sec. 213.)

The limitation invoked in this case is not a general statute of limitations, taking away all remedy as to every party liable, either personally or through his property, for the debt. It arises under a specific Act adopted for a particular purpose, and has reference solely to the estates of deceased persons. It applies to no other subject matter. The provision is adopted to facilitate the early settlement of the estates of deceased persons, and provides that, unless a claim be presented within ten months after publication of notice, "it shall be forever barred." That is to say, it shall be forever barred *as a claim against the estate*—the claimant shall have no right, thereafter, to payment out of the estate of the deceased. The whole subject matter of the provision is claims against the estate. It in no way affects claims against other parties or against the property of others, or the contracts of other parties, although the same demand may also be a claim against the estate. Thus, if two parties are jointly liable on a demand, and one dies, the demand would undoubtedly be barred as respects the estate of the deceased party by a failure to present the claim within the ten months prescribed; but this would in no respect affect the right of action against the survivor. The debt is not extinguished, paid, or discharged, nor is the cause of action barred as to the survivor. A payment, or valid release or discharge, or extinguishment of the debt as to the deceased, no matter in what form it might be accomplished, would also be a payment, discharge, or extinguishment as to the survivor, because the debt no longer exists. Suppose Mrs. Carrillo had not been the wife of Rains, and, having no interest in the matter herself, had indorsed the notes in suit, intending to be security for their payment; the notes had fallen due, the proper steps had been taken to charge her as indorser, Rains had subsequently died, and the holder had failed to present

the notes to the administrator, and the claim had thereby been barred as against the estate, although four years have not elapsed since the making of the notes. We apprehend it would not be claimed that an action could not be maintained against Mrs. Carrillo on her indorsement. The bar did not attach to her contract, and the fact that she was a surety merely would not affect the question. Her contract is still in force. The failure to make the money out of the principal was the result of neglect—mere non-action on the part of the holder. The principal might be involved, and .the holder look only to the surety. The surety might at any time, have paid the demand and presented the claim herself, and thus protected herself. This would have been her remedy. The non-action of the holder, by which the claim became barred, would not discharge the surety. (*Dane* v. *Cordnan*, 24 Cal. 164; *Whiting* v. *Clark*, 17 Cal. 410.)

In the latter case the creditor allowed the demand to become barred as to the principal, and the surety claimed that the bar discharged him. The Court held otherwise, and the case is directly in point as to this question. So, had Mrs. Carrillo not been the wife of Rains, and had the mortgage in question contained a covenant on her part to pay the debt, she certainly would not have been discharged from her own liability on her personal covenant because the creditor allowed his claim *against the estate* to become barred. Her own liability, on her own independent covenant, would have continued until it should, in some mode, become paid, satisfied, released, discharged, or extinguished, or until it should become barred, as to her, under the general Statute of Limitations; and it can make no difference in principle whether she is generally personally liable or whether she has become liable through her property to the extent of the value of a specific piece of property, which, by her contract, she has subjected to the demand, or which she has, in effect, cove-

nanted shall pay the demand so far as it will go toward payment.

It must be borne in mind, in examining the case now before us, that there are two contracts, the contract on the part of Rains to pay the debt, of which the notes are the evidence, and the independent contract on the part of Mrs. Rains that her lands shall pay it, or which is the same thing, be bound for its payment. In the older States, where a different time was prescribed in the Statutes of Limitations for simple contracts and those under seal, an action to foreclose a mortgage was held not to be barred, although the action on the note secured was barred. Thus, in *Elkins* v. *Edwards*, 8 Geo. 326, an action to foreclose a mortgage, the Supreme Court of Georgia say: "Because the *remedy* on the note is barred by the statute in six years, it does not follow that the creditor's remedy on the mortgage, being a *sealed* instrument, is also barred. The creditor's remedy on the mortgage is not barred until *twenty* years—the *debt being unpaid*." And it is on this very difference between our statute and those of other States that our predecessors, in *Lord* v. *Morris*, 18 Cal. 483, held an action to foreclose a mortgage to be barred, in this State, at the same time with the action on the note. The Court, by FIELD, C. J., say: "It is undoubtedly true, as stated by the Court in the case from Georgia, that the creditor stipulated by contract for *two remedies* against his debtor to enforce the collection of his demand—the *one by action upon the note*, and *the other by petition and foreclosure upon the mortgage*. Similar remedies he can pursue in this State. He can proceed upon the note, and take an ordinary judgment for the amount due; or he can sue in equity upon the mortgage, and take a decree for its foreclosure and the sale of the premises. *The difference is, that here the limitation prescribed to the equitable suit is the same as that prescribed to the action at law. The mortgage is as much within the general designation of a ' contract, obliga-*

*tion, or liability, founded upon an instrument of writing,'* as is
the note itself.

"We do not question the correctness of the general doctrine prevailing in the Courts of several of the States, that a mortgage remains in force until the debt, for the security of which it is given, is paid. We only hold that the doctrine has no application under the Statute of Limitations of this State. A mortgage is a specialty, and is not within the terms of the English statute, or of the statutes of most of the States. An action founded upon such specialty can only be met by proof of payment. The payment may be established by direct evidence of the fact, and it may be presumed from the lapse of twenty years, when such presumption is not countervailed by evidence from the mortgagee. 'Thus,' says the Supreme Court of Maine, in *Joy* v. *Adams*, 26 Maine, 333, 'a mortgage security has not been deemed to be within any branch of the Statute of Limitations. He who would avoid such security must show payment, otherwise the mortgagee will not be precluded from entering upon and holding possession of the mortgaged premises. The mortgagor has not been allowed to defeat such right by showing merely that the personal security, to which the mortgage security is collateral, has become barred. (*Thayer* v. *Mann*, 19 Pick. 535.) But he has been allowed to allege payment, and for proof to rely upon the lapse of time, when it amounted to twenty years from the accruing of the indebtment. Such a lapse of time has been deemed to be sufficient for the purpose, in the absence of any countervailing considerations. This is admitted as a presumption of law, which may be removed by circumstances tending to produce a contrary presumption.' The view thus stated is met by our statute, which embraces a mortgage security within its terms. Here payment may be pleaded, and so may the statute itself without reference to the fact of payment.

" Our conclusion, therefore, upon the first question presented is, that where an action upon a promissory note, secured by a mortgage *of the same date* upon real property is barred by the statute, the mortgagee has no remedy upon the mortgage; *that though distinct remedies may be pursued by him, the limitation prescribed is the same to both.*" (Ib. 489.)

The principle thus established is, that there are two distinct contracts, and two distinct causes of action; that the creditor has stipulated for two remedies, one on the note, and the other on the mortgage—that is to say, that there is one cause of action on the note against the maker, and another on the mortgage against the mortgagor, and these may be against different parties, or, if originally against the same party, they may subsequently become separated, and attach to different parties. This principle was affirmed in *Low* v. *Allen*, 26 Cal. 142, and *Lent* v. *Shear*, 26 Cal. 362. In *Low* v. *Allen* we held that the cause of action on the mortgage became barred as to two of the defendants, while that on the note secured continued against one defendant in consequence of his absence from the State during a portion of the time. We said: "The mortgage contract of Thorp and Ramsdell is distinct from the note it was given to secure, and is manifestly one of the 'written contracts' on which the statute provides that no action shall be brought, except within four years after the cause of action accrued. Now a cause of action accrued against Thorp and Ramsdell on their mortgage contract, as collateral to Allen's several promises, as soon as those promises matured. Thorp and Ramsdell were both in the State at the time, and for aught that appears to the contrary, they have been here ever since." (26 Cal. 145.) Similar views were expressed in *Lent* v. *Shear*, 26 Cal. 369. Now, in this case, on the principle thus established, there was a cause of action against Rains on his personal liability upon the notes, to

which Mrs. Rains was personally no party, and another against Mrs. Rains on the mortgage, by which she bound her lands, and through them herself to the extent of the lands, for the payment of the debts evidenced by the notes. Rains had no interest in the lands, and was only a party to the mortgage for the purpose of manifesting his assent to its execution, in accordance with the requirements of the statute. He was, therefore, substantially no party to that cause of action affecting the lands, and the two causes of action were in reality originally against different parties. The cause of action against the mortgagor, on the mortgage in such case, might be prosecuted to judgment, without making the maker of the notes a party. The cause of action against Rains is barred by failure to present the notes to the administrator. But it is only barred as to him. The debt is not paid, satisfied, discharged, or in any way extinguished, and the cause of action against the lands, and through the lands on mortgage against Mrs. Carrillo, remains according to the principles of the cases cited. The cause of action against her is not upon Rains' contract, but upon her own, subjecting her lands to the lien of plaintiff's demand. Although she does not covenant personally to pay the debt, she does, in legal effect, covenant that the land mortgaged shall pay it, so far as it goes. This is *her* contract, not *Rains'*, and it is as effectual to bind the land as a covenant on her part, absolute in form to pay the debt herself, would be if she was competent to make such a covenant. And we have seen that an absolute covenant on her part to pay a debt would not be discharged or extinguished, or barred, simply because an action on a promise, on the part of Rains to pay the same debt, is barred as to him.

There is an obligation on the part of both to pay—one to pay the whole, the other to pay to the extent of the land bound. Rains' obligation is barred, the obligation of the land of Mrs. Carrillo is not.

If it be conceded that a mortgage is a claim within the meaning of the statute, which must be presented to the administrator, the property mortgaged in this case did not belong to the estate of Rains, and the mortgage was not his. Presenting the mortgage, as such, to the administrator would, therefore, be of no avail. It would only be necessary to present the mortgage to the administrator of Mrs. Carrillo, as a claim against her estate in the event of her death, in order to prevent a bar in favor of her estate.

A remark of the Chief Justice, in *Fallon* v. *Butler*, 21 Cal. 32, that a "presentation and allowance were necessary to secure the payment of the debt out of the general estate, if that were desired, and, *perhaps*, also to prevent the debt from being barred by the statute, *and thus uphold the mortgage*," and passages containing similar suggestions from *Willis* v. *Farley*, 24 Cal. 500, are cited as authority for the position taken by the respondents. These are but suggestions, and are made with reference to the cases then before the Court, where the maker of the note and the mortgagor were the same person. That is to say, both causes of action were against the estate. It may be that where the personal liability is against the estate, and the mortgaged property belongs to the estate, so that, in any event, the debt would have to be satisfied out of the estate, it would be necessary to present the claim to prevent a bar, and keep the remedy alive as to the debt, in order to uphold the remedy on the mortgage. But the principle can have no application to the case now in hand, where there is a contract of another party still alive—where the land is under a contract, not barred, to satisfy the demand.

In *Christy* v. *Dana, ante*, 174, where a similar question arose in an action to foreclose a mortgage executed by E. O. Dana, deceased, after the mortgaged property had

been conveyed to other parties, it was objected that the claim had not been presented to the administrator, and we said: " Inasmuch as no relief is demanded against the estate, and the intestate, at the time of his death, had no interest in the land, there was no need for the plaintiff to present his claim to the administratrix for allowance."

It is unnecessary now to determine whether Mrs. Carrillo, under section one hundred and thirty of the Probate Act, has a contingent claim against the estate of deceased, arising out of the mortgage upon her property as security for her husband's debt, and the liability to a sale thereunder, which may yet be presented within ten months after the sale, when the claim will become absolute. If so, it is nothing more than would accrue where two parties execute a joint note, one being in fact surety for the other, and the principal dies and the surety is compelled to pay it, which he would be undoubtedly liable to do at any time within four years after maturity, notwithstanding the claim might become barred as against the estate, by neglect of the holder to present it in time. He has bound himself to pay it, and he cannot escape the obligation. By paying the money, or any portion of it, he might, from the time of payment, acquire an absolute claim against the estate for the amount so paid. His claim, however, would not be the original notes, which were barred as to the estate, but for moneys paid on account of the deceased, contingent before, absolute after payment. (*Chipman* v. *Morrill*, 20 Cal. 133.) But whether Mrs. Carrillo has, or has not, such a contingent claim, that may hereafter become an absolute charge against the estate, cannot affect the question. She has undertaken absolutely, by her own independent, though collateral contract, that her land shall stand charged for the payment of the debt; and, as we have before seen, if there was danger that the holders of the note would fail to pursue the principal and make the money out of her estate, the remedy of the surety was to take up the

notes and present them herself. (*Dane* v. *Cordnan,* and *Whiting* v. *Clarke, supra.*)

It is unnecessary to consider some possible hypotheses, suggested in the brief of one of appellants' counsel, for it is clearly apparent from the record upon what view the Court acted in rendering judgment. Had the first conclusions of law adopted by the Court been allowed to stand, the judgment, and all presumptions of law, would have been the other way. Both conclusions are drawn from the same facts.

We think the first conclusions of law adopted by the Court correct, and the last erroneous. It is, therefore, unnecessary to determine whether it was proper for the Court to change its conclusions of law, and enter a different judgment from that at first ordered, at the time and in the manner pursued in this instance. As bearing upon the question, however, we will refer to the cases of *Carpentier* v. *Gardiner,* 29 Cal. 163, and *Calderwood* v. *Peyser,* 31 Cal. 337, in which we had occasion to consider cognate questions.

Judgment reversed, and the District Court directed to enter judgment for plaintiffs upon the findings, directing a sale of the premises, or so much thereof as may be necessary for the purpose, and payment out of the proceeds of the respective claims properly chargeable thereon, under the views expressed in this opinion, according to their respective priorities; and it appearing that the appellant has included in his transcript a large amount of irrelevant matter, it is ordered and adjudged that he recover the costs of the appeal, *less* one half of the expense of procuring and printing the transcript.

Mr. Justice RHODES dissented.

Mr. Justice CROCKETT, being disqualified, took no part in the decision.

By the Court, Temple, J.:

A rehearing was granted in this case for certain purposes indicated in the opinion rendered on the petition for rehearing. No brief has been filed by respondent on the rehearing, except on the part of certain infants, by Benjamin Hayes, their guardian *ad litem.* In this brief no attempt is made to show that the infants have rights which ought to be saved by decree; but objection is made to the manner in which the appeal is taken. The affidavit of Glassell is sufficient to show service of the notice of appeal upon Benjamin Hayes, and it was not necessary that he should be named as *guardian ad litem.* The record shows that he had appeared and represented the infants in that capacity. There being no provision in the mortgage for that purpose, the plaintiff is not entitled to counsel fees. The agreement to pay the taxes upon the mortgage was part of the consideration for the money obtained upon the mortgage, and is binding upon Mrs. Carrillo, and the plaintiff is entitled to retain that amount from the proceeds of the sale.

The judgment below is reversed, and the District Court directed to enter judgment for plaintiffs upon the findings, directing a sale of the premises, or so much thereof as may be necessary for the payment of the respective claims properly chargeable thereon, under the views expressed by this Court, according to their respective priorities; and it appearing that a large amount of irrelevant matter has been inserted in the transcript, it is ordered that the appellant recover but one half the costs and expense of printing the transcript.

Mr. Justice Crockett and Mr. Justice Wallace did not sit in this case.

[The first opinion in this case was delivered at the April Term, 1869. At this time Sawyer, C. J., Sanderson, J.,

Opinion of the Court—Temple, J.

Sprague, J., Rhodes, J., and Crockett, J., were the Justices of this Court. The opinion after the rehearing, was delivered at the April Term, 1870, when Temple, J., and Wallace, J., were Justices, in place of Sawyer, C. J., whose term had expired, and Sanderson, J., who had resigned. For some reason the case was not reported in the 39 Cal., with the other cases of the April Term, 1870.—Reporter.]