[No. 3583.]

EDWIN P. WHITMORE et al., Executors of the Will
    of HORACE M. WHITMORE, Deceased, v. THE
    SAN FRANCISCO SAVINGS UNION and JAMES
    De FREMERY et al.

Effect of not Presenting Claim to Executor for Allowance. — The
failure of a creditor of an estate to present his claim to the executor for
allowance, within the time fixed by the statute after publication of no-
tice to creditors, does not extinguish the debt within the sense in which
payment would extinguish it, but merely takes away the remedy of the
creditor.

Vol. L.—10

WHEN EQUITY WILL NOT COMPEL A CREDITOR TO GIVE UP HIS SECURITIES.—
If a debtor, before his decease, had conveyed land to a person in trust,
to secure his promissory note, and, after his decease, the creditor fails
to present his claim to the executor for allowance within the time fixed
by the statute after publication of notice to creditors, the executor can-
not invoke the power of a court of equity to compel the creditor to sur-
render his security, or to enjoin the creditor from selling the land under
a power contained in the deed of trust.

APPEAL from the District Court, Twelfth Judicial Dis-
tiict, City and County of San Francisco.

The complaint averred that Horace M. Whitmore, on the
2d day of April, 1869, gave his promissory note to the de-
fendant, the San Francisco Savings Union, for the sum of
fifteen hundred dollars, payable one year from date, with
interest at one per cent. per month, payable monthly,
and at the same time to secure the note, gave to the defend-
ants, De Fremery et al., a deed of trust of a tract of land in
Alameda County; that the deed contained a power author-
izing the trustees to sell the land at public auction, by pub-
lishing notice of sale for three weeks, if default was made
in the payment, and to execute to the purchaser a deed.
That said Horace died on the 9th day of March, 1870, leav-
ing a will, in which he appointed the plaintiffs his executors;
that the will was probated on the 30th of March, 1870; that,
on the 18th day of April, 1870, notice to creditors of the
estate to present their claims for allowance within ten
months was published, and that more than ten months had
expired, and the defendant, the San Francisco Savings
Union, had failed to present its said claim for allowance;
and that the defendants, the trustees, had, on the 23d of
October, 1871, under the power contained in the deed, ad-
vertised the land for sale to pay the debt and the expenses
of the trust, and would sell the same unless restrained.

The complaint also averred that the deceased had re-
mained in possession of the property while he lived, and
that the plaintiffs were in possession as executors, and asked
that an account be taken of the expenses of the trust, and
contained an offer to pay such expenses.

A temporary injunction was issued restraining the sale.

The defendants demurred to the complaint, but the court overruled the demurrer, and gave judgment, perpetually enjoining the sale and decreeing that the defendants had not any title, legal or equitable, in the land. The defendants appealed.

*Campbell, Fox & Campbell*, for the Appellants.

A plaintiff coming into a court of equity to ask a favor must do equity. Of this there are many examples. Here he must pay or offer to pay what is justly due. 1. A borrower on usurious interest asking equity to set aside the instruments of security must pay the debt and legal interest. (Story's Eq. J., Sec. 301.) 2. An application to rescind such a contract is not a matter of absolute right, but addressed to the sound discretion of the court, according to its own notion of what is reasonable and proper under all the circumstances of the particular case. (Story's Eq. J., Secs. 693, 696, 707; *Fanning* v. *Durham*, 5 John. Ch. 122; *Tupper* v. *Powell*, 1 John. Ch. 439; *Rogers* v. *Rathbun*, 1 John. Ch. 367; *Morgan* v. *Schermerhorn*, 1 Paige Ch. 544.)

Probate Law, Secs. 130, 135, 136, only constitutes a Statute of Limitations. The non-presentation of such a note only gives rise to a plea in abatement. It is neither a matter of payment, discharge nor satisfaction. (*Hentsch* v. *Porter*, 10 Cal. 555.)

There is no violation of legal or moral obligation in such non-presentation as there is in the case of usury, and all courts hold even in usury that the party applying to equity for relief must pay what is justly due, which these plaintiffs seek to avoid.

Non-presentment is not payment nor satisfaction, and the note will be enforced against the mortgagor (other than the maker of the note) and his land, though the maker of the note be dead and the note not presented in time to his administrators. (*Sichel* v. *Carillo*, 42 Cal. 493.)

So, also, in like cases against grantee of mortgagor. (*Christy* v. *Dana*, 34 Cal. 548; *Davis* v. *Middleton*, 14 Cal. 542.)

*E. W. McGraw*, for the Respondents.

The statute law is found in the following sections: Probate Act, Sec. 130 (Hittell, 5828): "If a claim be not presented within ten months after the first publication of the notice [to creditors] it shall be barred forever." Probate Act, Sec. 133 (Hittell, 5831): "If the claim or any part thereof, be secured by a mortgage *or other* lien, such mortgage or other evidence of lien shall be attached to the claim and filed therewith," etc. Probate Act, Sec. 135 (Hittell, 5833): "No claim shall be allowed by the executor or administrator or by the probate judge, which is barred by the Statute of Limitations."

In the *Estate of Taylor* (10 Cal. 482, and 16 Cal. 434) the statute was held applicable to all claims. In *Ellis* v. *Polhemus* (27 Cal. 350) it was held applicable to a note secured by mortgage. Whatever may be the estate of the trustees as between themselves and third persons, it is well settled that as between the parties to it and before sale, a deed of trust does not essentially differ from a mortgage. This Court in a late case has so held expressly. (*Tyler* v. *Granger*, 48 Cal. 259.)

It would be perhaps difficult for the appellants to define their "legal estate." It certainly is not an estate in fee, nor for life, nor for years, nor at will, nor by sufferance—it has incident to it neither possession nor the right of possession. (*Tyler* v. *Granger, supra.*)

Such is the law in other States. In Illinois: *Sargent* v. *Howe*, 21 Ill. 148; *Graham* v. *Anderson*, 42 Ill. 515–17; *Pohlman* v. *Shumway*, 24 Ill. 127. In North Carolina: *Stenson* v. *Fries*, 2 Jones Eq. 156; *Harrison* v. *Battel*, 1 Dev. Eq. 541; *Pool* v. *Glover*, 2 Ired. (Law) 129. In Tennessee: *Bennett* v. *Union Bank*, 5 Humph. 612; *Vance* v. *Johnson*, 10 Humph. 220. In Missouri: *Kenna* v. *Walsch*, 44 Mo. 65. In Ohio: *Morris* v. *Way*, 16 Ohio, 469; *Turner* v. *Johnson*, 10 Ohio, 205. In Alabama: *Hogan* v. *Lapreter*, 1 Porter, 408; *Marriott* v. *Hardesty*, 8 Ala. 706; *Graham* v. *King*, 15 Ala. 563. In Mississippi: *Carpenter* v. *Brown*, 42 Miss. 47. In Michigan: *Comstock* v. *Hand*, Walker's Ch. 110.

It answers perfectly to every definition of a mortgage. (4 Kent Com. 138; 2 Blackstone Com. 157–8; *Flagg* v. *Mann*, 2 Story, 533; *Easton* v. *Whiting*, 3 Pick 490.)

The grantor has an estate that he may convey by deed. (*Graham* v. *King*, 15 Ala. 563.)

It seems to us that the true rule in such cases is that explicitly and clearly announced by Judge Blatchford.

The case was a sale by trustees of trust property within the Union lines during the war, the grantor being in the Confederate States. *Held:* that the right to a sale could not exist in favor of the creditor unless there existed at the same time a corresponding duty and capacity on the part of the debtor to pay the debt to the creditor. In this case the payment of the debt by the debtor would have been "business and commercial intercourse," and therefore unlawful, and therefore the remedy for the recovery of the debt by sale of lands under the trust deed was suspended during the war. (*Kanawha Coal Co.* v. *Kanawha Coal and Iron Co.*, 7 Blatch. 391–408.)

The maxim that he who seeks equity must do equity, has no application to this case. It is probable that in usury cases the maxim was first applied on the principle of avoiding circuity of action—the creditor having the right to recover the original consideration at law, though his security was void. (*Aguilar* v. *Aguilar*, 5 Madd. 514; *Harrison* v. *Keating*, 4 Hare, 4.)

In the usury cases another principle had its influence. Both parties were *in pari delictu*, both equally violators of the law, and it was considered inequitable to allow one to profit by his own wrong.

Here, the plaintiffs have done their whole duty under the law, and the defendants are in default. What is the equity that one must do in order to obtain equity?

By the Court, Wallace, C. J.:

The failure to present the claim against the estate of Whitmore within the time required by the statute did not operate as an extinguishment of the debt, in the sense in which payment or accord and satisfaction would operate.

In *Sichel* v. *Carillo* (42 Cal. 493), we said: "It is well settled with reference to actions for moneys due on contracts, that the statute does not discharge the debt, or in any way extinguish the right or destroy the obligation, but only takes away a remedy. The debt remains unsatisfied and unextinguished." Had the statute run during the lifetime of Whitmore, it would, in an action brought against him for a recovery of the demand, have afforded him a defense, not on the ground that the debt itself had become extinguished by the lapse of the statutory period, but that the plaintiff in such action had lost his remedy for its recovery.

So the statute, requiring the presentation of a claim against the estate within the designated period of time after publication of notice to creditors, in order that it may be ranked among the acknowledged debts of the estate, does not operate an extinguishment or forfeiture of the claim, for want of the required presentation, but affords the estate a defense against an action brought against it to recover the demand.

If, however, as in this case, the debt be in fact subsisting and unpaid, neither the debtor in his lifetime, nor his estate after his decease, being solvent, can successfully invoke the power of a court of equity to compel the creditor to surrender securities placed in his hands to secure its payment. The recognized maxim of the court is that he who seeks equity must do equity. (*Hughes* v. *Davis*, 40 Cal. 117.) The court would doubtless compel the surrender of the securities upon the payment of the debt, or it would, upon the application of the debtor, direct a sale of the securities, and that the overplus, if any, arising from such sale after the payment of the debt, be paid over to the debtor. This would be to do equity. But to compel the creditor to surrender his securities, without payment of the debt, would be inequitable—as much so as to permit the creditor to retain those securities after such payment had been effected.

Judgment reversed and cause remanded, with directions to sustain the demurrer to the complaint.

CROCKETT, J., dissenting:

I am unable in this case to agree with a majority of my associates. In *Pitte* v. *Shipley* (46 Cal. 154), and *Harp* v. *Calahan* (Id. 222), we held that a creditor holding a mortgage lien on the property of the estate of a deceased person must present his claim for allowance within the statutory period, in order to preserve the lien of the mortgage. In my opinion, the same reasoning by which we reached that conclusion applies with equal force to a creditor holding a trust deed on property of the estate, on the face of which (as in this case) it appears that the property was held in trust, only as security for a debt due from the deceased in his lifetime. Though the dry, legal title may be in the trustee, the equitable title, subject to the trust, is in the estate, and is assets for the payment of debts. The interest of the estate in the property can only be administered through the Probate Court, and to accomplish this it is indispensable that all persons claiming a lien by way of mortgage, deed of trust or otherwise on the property of the estate, should present their claims for allowance. If they fail to do so, the lien is lost.

I do not understand that this proposition is denied or questioned in the prevailing opinion.

But this is a suit in equity, and the defendants invoke the maxim that he who seeks equity must do equity, and insist that it would be inequitable to compel a release of the legal title, except upon payment of the debt. If it be conceded that this rule would apply to a similar action brought by the debtor himself, whose debt had been barred by the ordinary Statute of Limitations, I think it has no application to an action of this character brought by the administrator against a creditor who had failed to present his claim for allowance. The failure to present the claim for allowance abrogates the lien given to secure it. The administrator has no authority to pay it, nor the court to allow it as a demand against the estate, nor could the debt be revived by a subsequent promise. It may be necessary to devote the property to the payment of other debts, or the

funeral expenses, the family allowance, or the expenses of administration, which are preferred claims under the probate system.

If a creditor, whose debt is secured by a deed of trust upon the whole property of the estate, and who fails to present his claim for allowance, may nevertheless retain the property and devote it to the exclusive payment of his own debt, he would thereby practically defeat the administration of the estate in the manner prescribed by law. When the debt ceases to be a charge upon the property of the estate, as it does by a failure to present it for allowance, there is nothing inequitable in compelling the creditor to release the legal title, so that the property may be devoted to the legitimate purposes of the administration.

If a different rule prevails this anomaly would result, viz.: That the whole estate might be incumbered by successive deeds of trust, none of which were presented for allowance. The debts would continue to bear interest, and in the meantime the administrator and the Probate Court would have no authority to pay them, and thus the estate would be consumed with interest; and preferred debts, including the funeral expenses and the family allowance, must remain unpaid, until the trustees should see fit to sell the property, or should be forced to do so by a court of equity, in order to ascertain the surplus, if any, coming to the estate. Such a practice would result in the greatest perplexity in the administration of the estate, and that, too, in the interest of a creditor who neglects to present his claim for allowance during the ample period allowed by law for that purpose. The administrator represents *all* the creditors for the purpose of payment; and other creditors besides those claiming under trust deeds have an equitable lien on all the property of the estate. Those who negligently or willfully fail to present their claims, ought not, in a court of equity, to be allowed to retain the dry, legal title to the prejudice of the more vigilant creditors who have duly presented their claims for allowance. In my judgment, there is nothing inequitable in compelling a release of the legal title by creditors of the estate who fail to pre-

sent their claims for allowance, and have thereby lost the right to enforce their liens upon the property of the estate.

Mr. Justice McKINSTRY also dissented.