JOHN BIGLEY, Respondent, v. EDWARD NUNAN, Appellant.

No. 3691; October 3, 1876.

**Public Streets—Olive Avenue in San Francisco—Act of Congress of 1866.**—A reservation of land for public use, made by city ordinance, is within the act of Congress of 1866, relinquishing the title of the United States to land in the western addition of San Francisco, "except such portions thereof as may be reserved and set apart by ordinance of said city for public use," although the reservation was made before the passage of such act; and if a street so reserved, such as Olive avenue, is definitely outlined and located on the map, it is not material that it is not designated by name.

**Public Street—Obstruction—Action by Individual.**—If the obstruction of a public street renders access to a lot less convenient than it otherwise would be, the owner of the lot can maintain an action to abate the nuisance and recover special damages.

**Public Street—Obstruction—Remedy of Individual.**—Where the obstruction of a public street furnishes a continually recurring cause of action to a lot owner, a court of law cannot afford him adequate relief. Injunction is his remedy.

APPEAL from Fourth Judicial District, San Francisco County.

Hutton & O'Neil for respondent; George & Loughborough for appellant.

CROCKETT, J.—The action is to abate a public nuisance and for the recovery of special damages alleged to have been suffered by the plaintiff. The nuisance complained of is the obstruction of the north half of Olive avenue, which is alleged to be a public street in the city of San Francisco, located in the western addition and within the territory, the title to which

was relinquished by the United States to the city by the act of Congress of March 8, 1866 (14 Stats. at Large, 4). The title was conveyed to the city in trust "that all the said land not heretofore granted to said city shall be disposed of and conveyed by said city to parties in the bona fide actual possession thereof, by themselves or tenants, on the passage of this act, in such quantities and upon such terms and conditions as the legislature of the state of California may prescribe, except such portions thereof as may be reserved and set apart by ordinance of said city for public use." By the act of March 14, 1870 (Stats. 1869–70, p. 353), the legislature prescribed the method and the terms and conditions on which the beneficiaries might avail themselves of the act of Congress and secure the title. The defendants claim that in accordance with these provisions they have acquired the title to that portion of Olive avenue (so called) which is alleged to have been obstructed, and that it has never been dedicated to public use as a street. But, as we have seen, the act of Congress excepts from the grant to the persons in possession such portions of the land "as may be reserved and set apart by ordinance of said city for public use." If strictly construed this phrase might, perhaps, be held to apply only to reservations for public use, to be made by ordinance passed after the passage of the act of Congress. But this interpretation would be too narrow, and a reservation for public use made by a city ordinance before the passage of the act of Congress comes fully within the spirit, if not within the precise letter, of the act. Was this land so reserved? By the act of April 26, 1862 (Stats. 1862, p. 407), the legislature established a "Board of Civil Engineers" to survey all the streets of the city "and fix the lines thereof," and to make a map showing the width of every street, and to erect monuments for the preservation of the street lines so established. On completing their work the board was required to return the maps and profiles, with a report of their proceedings, to the board of supervisors for their approval; and it is then provided that "when the same shall be finally adopted by an order of the board of supervisors, such maps and profiles shall stand as the legal and valid official plan of said city, to determine the lines of the streets and the grades thereof." The engineers, having completed their work, returned the maps and profiles to the board of

supervisors, and in January, 1866, that .board, by an order duly entered, adopted and approved the survey, maps, profiles and block book, as returned, and declared that they ''do stand as the legal and valid official plan of the city and county of San Francisco, to determine the lines of the streets and the grades thereof, as provided by the acts of the legislature aforesaid.'' On the map so approved, while ''Olive avenue'' is not designated by name as a street, there are parallel lines running through the blocks, which indicate unmistakably that they were intended to designate a street precisely where Olive avenue is now located. Except that it is not named on the map, it is indicated and its locality fixed, precisely as are all the other streets of the city. It is too clear to admit of debate that the space now called ''Olive avenue'' was represented on the map as one of the public streets of the city; and by adopting the map as the official plan ''to determine the lines of the streets,'' the board of supervisors reserved that space for public use within the true intent and meaning of the act of Congress. Having been thus reserved and dedicated to public use, it is within the exception specified in the act, and the defendants or their grantors acquired no equities which could be perfected by a conveyance from the city under the act of March 14, 1870.

We think the proof of dedication was sufficient, and that the plaintiff suffered such special damage as entitled him to maintain the action. The fact, however, that his property was depreciated in value by the alleged nuisance is not to be included in this category: Hopkins v. Wn. Pac. R. R. Co., 50 Cal. 150. But there was evidence tending to show that by reason of the obstruction of the street the access to the plaintiff's lot was less convenient than it would otherwise have been, and that he was, to that extent, obstructed in the free use and enjoyment of his property. This was such special damage as entitled him to maintain the action: Schulte v. N. P. T. Co., 50 Cal. 592.

The authorities are to the effect that to entitle the party to an injunction in such cases, the damage must be of such a nature that an action at law would not afford adequate relief. There are many cases in which the remedy by an action at law would furnish complete redress; as, for example, if the defendant had dug 'a pit in a public highway, in which a

traveler had fallen, an action for damages would afford a complete remedy. But where the continuance of the nuisance, as in this case, would furnish a continually recurring cause of action, it is clear that a court of law cannot give adequate relief.

We consider it unnecessary to notice more particularly the other points discussed by counsel.

Judgment and order affirmed.

We concur: Rhodes, J.; Niles, J.